OAKLEY TRANSPORT, INC., *et al.*, Plaintiffs-Appellants, v. ZURICH IN-SURANCE COMPANY, Defendant-Appellee.

First District (5th Division)    No. 1—94—1798

Opinion filed March 31, 1995.

James K. Horstman, Thomas H. Neuckranz, and Lloyd E. Williams, Jr., all of Williams & Montgomery, Ltd., of Chicago, for appellants.

Marlene A. Kurilla, of Pretzel & Stouffer, Chartered, of Chicago, for appellee.

JUSTICE T. O'BRIEN delivered the opinion of the court:

Plaintiffs appeal from an order of the circuit court which dismissed with prejudice their four-count amended complaint for declaratory judgment and other relief. The trial court held that defendant Zurich Insurance Co. (Zurich) did not owe a duty to defend or indemnify plaintiff Oakley Transport, Inc. (Oakley), in connection with a motor vehicle accident involving one of Oakley's employees. We affirm.

Because the trial court dismissed each of the counts in question pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1992)), the factual allegations in the complaint are taken as true.

Oakley is a Florida corporation engaged in the interstate trucking business. On September 21, 1991, an employee of Oakley was involved in a motor vehicle accident that resulted in bodily injury and property damage. The accident occurred while the employee was operating a semi-tractor during the course of his employment. The

employee allegedly drove the truck off the road and into a number of homes.

The injured parties and persons on their behalf filed four separate lawsuits against Oakley and its employee. As to Oakley, each of the complaints asserted several theories of liability, including negligent entrustment and negligent supervision. Oakley in turn tendered the defense of each of the suits to coplaintiff Planet Insurance Co. (Planet). Planet accepted the tender in accordance with a trucker's liability policy and ultimately contributed funds in settlement of the tort claims.

Oakley also tendered the defense of the underlying litigation to Zurich pursuant to a commercial general liability policy (CGL). Zurich, however, rejected coverage in a letter dated September 21, 1992. The rejection letter indicated that an exclusion in the CGL policy precluded coverage for bodily injury and property damage arising out of the "entrustment" of an "auto" as defined in the policy. The exclusion provided in pertinent part:

"This insurance does not apply to:

\* \* \*

g. 'Bodily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto', or watercraft owned or operated by or rented or loaned to any insured."

On December 29, 1992, Oakley and Planet filed a complaint for declaratory judgment against Zurich, seeking among other things reimbursement for the costs incurred in defending and settling the underlying litigation. In count I, plaintiffs requested a declaration that Zurich was estopped from denying coverage based upon Zurich's purportedly improper rejection of Oakley's tender of defense. Counts II and III sounded in "bad faith" and breach of contract, respectively, and count IV sought statutory sanctions for vexatious and unreasonable refusal to pay. 215 ILCS 5/155 (West 1992).

Zurich responded with a motion to dismiss the complaint under section 2—615 for failure to state a cause of action. (735 ILCS 5/2—615 (West 1992).) Zurich's motion was based primarily upon the "auto" exclusion which was cited in its letter of rejection. The trial court granted the motion without prejudice.

Plaintiffs thereafter filed an amended complaint for declaratory relief on July 20, 1993. Zurich again moved to dismiss the complaint under section 2—615 for failure to state a cause of action, repeating its contention that the "auto" exclusion precluded coverage. The trial court agreed and granted the motion to dismiss. The court held that Zurich's insurance policy excluded coverage for any claims of

negligent entrustment or negligent supervision as alleged in the underlying complaints and therefore dismissed the declaratory action with prejudice. Plaintiffs then filed this appeal.

On appeal, plaintiffs initially contend that the trial court erred in looking beyond the allegations of the underlying complaints by "engag(ing) counsel in a lengthy inquiry regarding the background facts and theories of the underlying litigation." Specifically, plaintiffs refer to the fact that during the hearing on Zurich's motion to dismiss the amended complaint, the trial judge discussed with counsel an order of partial summary judgment entered in one of the underlying litigations.[1] The order itself incorporated a recitation of certain testimony considered by the trial court in the tort action in ruling on the issue of negligent entrustment.

It is true, as plaintiffs point out, that the "declaratory" court must ordinarily confine its inquiry to a comparison of the allegations of the underlying complaint and the relevant provisions of the insurance policy in determining a duty to defend. With few recognized exceptions not applicable here, an insurer's duty to defend arises if the complaint alleges facts that fall within, or potentially within, the policy's coverage.[2] (*Dixon Distributing Co. v. Hanover Insurance Co.* (1994), 161 Ill. 2d 433, 641 N.E.2d 395.) It is settled law that the allegations in the complaint are dispositive of the insurer's duty to defend, and not the findings of the underlying litigation. Such findings may be relevant to an insurer's duty to indemnify, but they

---

[1]The order, attached as an exhibit to plaintiffs' original and amended complaints, was entered in Yanuzzi v. Green (N.D. Ind. 1992), Nos. H91—352, H91—373, and H92—056 cons., on November 4, 1992, two months after Zurich rejected Oakley's tender of defense.

[2]Plaintiffs' suggestion that a trial court is limited solely to a review of the allegations in the tort complaint in ascertaining a duty to defend, while supported by decisions echoing boiler-plate law, is an overstatement. See, for example, *Millers Mutual Insurance Association v. Ainsworth Seed Co.* (1989), 194 Ill. App. 3d 888, 552 N.E.2d 254, citing *Fidelity & Casualty Co. v. Envirodyne Engineers, Inc.* (1983), 122 Ill. App. 3d 301, 461 N.E.2d 471 ("We conclude that extrinsic facts may be considered as long as they do not bear upon issues in the underlying litigation"); *Bituminous Casualty Corp. v. Fulkerson* (1991), 212 Ill. App. 3d 556, 562, 571 N.E.2d 256, citing *State Farm Fire & Casualty Co. v. Shelton* (1988), 176 Ill. App. 3d 858, 531 N.E.2d 913 ("A court may look beyond the allegations in the complaint only if the coverage issue involves such ancillary matters as whether the insured paid the premiums or whether he is the proper insured under the policy"); and *Charles H. Eichelkraut & Sons, Inc. v. Bituminous Casualty Corp.* (1988), 166 Ill. App. 3d 550, 519 N.E.2d 1180 (insureds waived objection by submitting extraneous facts in support of motion for summary judgment on the issue of coverage).

have no bearing on an insurer's separate and broader duty to defend. A trial court, therefore, should not expand its inquiry beyond the allegations set forth in the underlying complaint.

To be sure, the fact that the court in the tort action may have decided certain facts relevant to the issue of coverage does not necessarily afford an insurer the luxury of denying its duty to defend based upon those facts. The insurance policy, which contractually obligates the insurer to provide a defense based upon the operative allegations in the tort complaint, contemplates that an insurer undertake the insured's defense when given proper notice of a potential claim and not after the claim has been adjudicated. Indeed, the duty to defend is to be determined at the time the insured makes a tender of defense. An insurer who has received such a tender simply cannot wait until the resolution of the underlying case, or some portion thereof, in the hope that there may be some finding of fact which negates the duty to defend.

■ Nevertheless, nothing in the record in this case suggests that the trial court actually relied upon any of the findings in the underlying litigation in granting Zurich's motion to dismiss. The trial court's purportedly "lengthy inquiry" into certain background facts occurred in the course of an extended hearing on February 10, 1994. The court took the matter under advisement and eventually issued its ruling on April 25, 1994. During the ruling, the court unequivocally stated, "I analyzed this action in terms of the original *underlying complaint* and I can find no conceivable theory on the *underlying complaint* which justifies coverage." (Emphasis added.) At this latter hearing, the court did not refer to, let alone rely upon, any of the findings of court in the tort litigation.

Furthermore, any perceived error on the part of the trial court in discussing the terms of the order of summary judgment is cured by our independent review of the allegations in the underlying action. On appeal from a dismissal of a complaint for failure to state a cause of action, our sole task is to determine whether the allegations in the complaint are sufficient to set forth a cause of action for which relief may be granted. (*Baker v. Miller* (1994), 159 Ill. 2d 249, 255, 636 N.E.2d 551.) The issue before us in this case involves the interpretation of an insurance policy and is therefore a question of law subject to *de novo* review. Accordingly, we summarily disregard any extrinsic facts that the trial court may have considered and by so doing eradicate any error in this case.

Plaintiffs also argue that, procedurally, "the trial court's disposition of the substantive coverage issue pursuant to Zurich's section 2—615 motion was improper and unfair to the plaintiffs." They sug-

gest that "had the court properly confined itself to the question of the sufficiency of the pleadings, it would not have reached the merits of the substantive issue." We disagree.

■ A dismissal under section 2—615 for failure to state a cause of action is warranted where an otherwise factually sufficient complaint presents only a question of law. Here, when ascertaining whether an insurance company must defend its insured in a suit filed against it, the trial court merely looks to the factual allegations of the underlying complaint and the provisions of the insurance policy. If a review of those allegations discloses that all of the claims are beyond coverage, an insurer is justified in refusing to defend. The court may then properly dismiss the action under section 2—615 for failure to state a cause of action, and such dismissal may be with prejudice because an insured cannot alter the terms of the policy or disavow the allegations in the underlying complaint in a subsequent pleading.

Plaintiffs next submit that "the 'arising out of' clause that is used in the Zurich exclusion has repeatedly been held to be ambiguous in insurance coverage cases." (*Dash Messenger Service, Inc. v. Hartford Insurance Co.* (1991), 221 Ill. App. 3d 1007, 582 N.E.2d 1257, *appeal denied* (1992), 143 Ill. 2d 637, 587 N.E.2d 1013; *Burlington Northern R.R. Co. v. Illinois Emasco Insurance Co.* (1987), 158 Ill. App. 3d 783, 511 N.E.2d 776; *Maryland Casualty Co. v. Chicago & North Western Transportation Co.* (1984), 126 Ill. App. 3d 150, 466 N.E.2d 1091.) They conclude that "as a matter of law, the ambiguity in Zurich's auto exclusion must be construed in favor of coverage." We find this argument to be specious at best.

■ First, in none of the cases cited by plaintiffs did the courts hold that the phrase "arising out of" was ambiguous and that it had to be construed in favor of coverage. At most, these courts noted that the "arising out of" language was broad and vague and should be liberally construed. Furthermore, in each of the cited cases, the phrase "arising out of" appeared in a section of the policy which provided *coverage* for bodily injury or property damage relating to an insured's "premises." A broad interpretation, therefore, inured to the benefit of the insured by expanding *coverage*. In contrast, the "arising out of" provision at issue in this case appears in an *exclusion* relating to the ownership, maintenance, use or entrustment of an "auto." A broad interpretation here would expand the *exclusion* to the advantage of the insurer. This latter result would, of course, turn on its head established judicial precedent regarding liberal construction of insurance polices in favor of the insured. Thus, the cases cited by plaintiffs involving the proper interpretation of the phrase "arising out of" as it appears in a section providing *coverage* offer minimal

assistance in resolving the appropriate interpretation of the same phrase as it appears in an *exclusion*.

In any event, we are mindful of our obligation to liberally construe any doubts as to coverage in favor of the insured. This is particularly true where, as here, the insurer seeks to avoid coverage based upon an exclusion in the policy. The applicability of such a provision must be clear and free from doubt. (*Monsalud v. State Farm Mutual Automobile Insurance Co.* (1991), 210 Ill. App. 3d 102, 568 N.E.2d 969.) However, we are not authorized to exercise our inventive powers and pervert the plain language of the policy in order to create an ambiguity where none exists. We find the language at issue in this case to be clear on its face. We decline, therefore, as have other jurisdictions which have considered the issue (*cf. Northern Insurance Co. v. Ekstrom* (Colo. 1989), 784 P.2d 320 (*en banc*)), to hold that the phrase "arising out of" as used in the "auto" exclusion is categorically ambiguous and that it must be construed in favor of coverage as a matter of law.

■ Substantively, plaintiffs maintain that the trial court erred in ruling that Zurich's policy excluded claims of negligent supervision from coverage. Plaintiffs concede that the policy excludes coverage for negligent entrustment. In regard to this latter type of claim, we note that Zurich premised its rejection of Oakley's tender of defense on an exclusion which specifically excepted from coverage bodily injury and property damage arising out of the "entrustment to others" of any "auto." The policy defines "auto" as "a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment." Clearly, there can be no coverage in this case based upon the tort allegations that Oakley negligently entrusted the semi-tractor to its employee.

Nevertheless, as to negligent supervision, plaintiffs assert that "by its terms the exclusion does not purport to exclude coverage for all of the theories of liability alleged in the underlying complaints. Conspicuously absent from the endorsement's list of actions precluded from coverage is any reference whatsoever to the cause of action for *negligent supervision.*" (Emphasis in original.) Plaintiffs argue that because a duty to defend exists even if only one of the liability theories in the tort action potentially falls within coverage, "the lack of inclusiveness of the exclusion is sufficient in itself to establish Zurich's duty to defend."

Plaintiffs further cite *Insurance Co. of North America v. Krigos* (1990), 196 Ill. App. 3d 200, 553 N.E.2d 708, *appeal denied* (1990), 133 Ill. 2d 558, 561 N.E.2d 692, for the proposition that the "auto" exclusion does not automatically eliminate from coverage all auto-related

injuries. They point out that negligent entrustment and negligent supervision are different causes of action, and that not all claims of negligent supervision are necessarily within the scope of the "auto" exclusion. In support of this argument, plaintiffs excerpt a portion of the *Krigos* opinion wherein the court commented:

> "[I]f a policy does not specifically exclude claims arising from negligent supervision, and the underlying complaint alleges negligent supervision as one proximate cause of injury, then coverage should be provided regardless of whether the policy excluded other alleged causes of injury." (*Krigos*, 196 Ill. App. 3d at 206.)

This statement, however, suffers from a lack of context.

In *Krigos*, the insured was sued in a tort action on the basis of negligent entrustment and negligent supervision in connection with a traffic accident. The collision allegedly occurred as the insured's son was driving a vehicle belonging to the insured. The insurer subsequently denied coverage of underlying claims on the basis of an exclusion in a homeowners' liability policy. The exclusion provided in part:

> "We will not cover claims that arise because you or another covered person owns, rents, operates or borrows a motor vehicle.
>
> We will not cover claims that arise because you or another person entrusts a motor vehicle to any person." *Krigos*, 196 Ill. App. 3d at 202.

The *Krigos* court found that the language of the exclusion "clearly and unambiguously excluded coverage for negligent entrustment."[3] (*Krigos*, 196 Ill. App. 3d at 203.) In reaching this conclusion, the court recognized that a claim for negligent entrustment requires the entrustment of an instrumentality to a person who may foreseeably cause harm to others. The court further stated that because "the instrumentality is a necessary element of the claim, there can be no coverage where the instrumentality was excluded [citation]; if the instrumentality was included, it is unnecessary to inquire into how it was involved." *Krigos*, 196 Ill. App. 3d at 203, citing *Allstate Insurance Co. v. Panzica* (1987), 162 Ill. App. 3d 589, 593, *appeal denied* (1988), 119 Ill. 2d 553, 522 N.E.2d 1240.

---

[3]Although the court initially held that the trial court's ruling of no coverage was presumed to be correct because the appellate record did not contain a copy of the underlying complaint, the remainder of the opinion was not thereby rendered nugatory *obiter dicta*. "When a court has before it various grounds urged for reversal [or as in our case affirmance] and it decides that a certain number are valid, it does not follow that because the first ground would have been sufficient for reversal [or affirmance], the other grounds do not deserve equal recognition as the basis for the court's judgment." *Larson v. Johnson* (1953), 1 Ill. App. 2d 36, 40, 116 N.E.2d 187.

The court in *Krigos*, however, refused to apply the same "instrumentality theory" in determining whether there could be coverage for negligent supervision. The court observed that " 'The "instrumentality" theory, to the extent it is recognized, is clearly limited to a negligent entrustment action for the explicit reason that negligent entrustment includes by definition a finding of negligence with the entrusted instrument.' " *Krigos*, 196 Ill. App. 3d at 204, quoting *West American Insurance Co. v. Hinze* (7th Cir. 1988), 843 F.2d 263, 267.

Instead, the *Krigos* court adopted a "proximate cause" analysis first espoused in this State in *United States Fidelity & Guaranty Co. v. State Farm Mutual Automobile Insurance Co.* (1987), 152 Ill. App. 3d 46, 504 N.E.2d 123 (*USF&G*). The court there stated in part:

"If a proximate cause of an injury is within the included coverage of an insurance policy, the included coverage is not voided merely because an additional proximate cause of the injury is a cause which is excluded under the policy. Thus, in order for an injury to be excluded from coverage under an insurance policy, the injury must have been caused solely by a proximate cause which is excluded under the policy." *USF&G*, 152 Ill. App. 3d at 48.

The *Krigos* court then "extrapolated" principles of intervening negligence into the proximate cause equation to conclude that there could be no coverage where the allegations in the tort action "establish that another, excluded, cause of injury severed the causal connection between the injury and the negligent supervision." (*Krigos*, 196 Ill. App. 3d at 205.) In other words, "where the injury was caused by the unforeseeable result of independent action by a third party, there was, as a matter of law, no causal link between any negligent supervision and the injury, and coverage will not be provided." (*Krigos*, 196 Ill. App. 3d at 206.) Applying the extrapolation of the proximate cause analysis to the facts before it, the court in *Krigos* held that the independent actions of the insured's son "in the operation of the car, as a matter of law, severed the causal connection between any negligent supervision by (the insured) and (the tort claimant's) injuries." *Krigos*, 196 Ill. App. 3d at 206.

*Krigos* is troublesome. To begin with, the final analysis in *Krigos* erroneously finds as a matter of law that the "intervening negligence" of the insured's son in operating the car severed the causal connection between the actions of the insured and the injuries of the tort claimant. On the contrary, the very existence of the separate act of negligence on the part of the insured's son is a prerequisite to a claim of negligent supervision against the insured. The gravamen of negligent supervision is that one party (the supervisor) acted

unreasonably in allowing another party (the supervisee) over whom he or she had a duty to control to commit some wrong against a third party. The supervisee's conduct which ultimately results in injuries cannot be viewed as an intervening act of negligence. Indeed, the negligence of the supervisor is, by definition, derivative of the negligence of the supervisee.

Moreover, whether the insured should have foreseen that the actions of her son would result in injuries to a third party is a critical question for the trier of fact in the tort litigation. The reasonable foreseeability of such actions should not be decided by the court in the declaratory action as a matter of law. In fact, the declaratory court's premature determination that the insured was not negligent in supervising her son's use of the motor vehicle impermissibly bars consideration of that issue in the tort action under the principles of *res judicata.*

*Krigos,* however, is problematic on an even more fundamental level; namely, the assimilation of principles from tort law into the analysis of an insurance contract. Under the *Krigos* approach, concepts and rules germane to the negligence arena are incorporated into the determination of insurance coverage. The interpretation of a policy exclusion, heretofore interpreted in accordance with the plain meaning of the language, is now to be viewed under the microscope of joint and several liability, proximate cause and intervening negligence. This cannot be so.

Although the *Krigos* approach accurately reflects tort law, it fails to recognize that the issue before the declaratory court is the interpretation of a contract. It also fails to recognize that tort liability on the part of the insured establishes contractual liability on the part of the insurer only where the policy affords coverage, and that determination is subject to the rules of contract construction, and not tort principles. The determination of, among other things, reasonable foreseeability, concurrent causation and similar concepts must remain within the province of the trier of fact in the underlying tort action. Accordingly, we reject the analysis in *Krigos* to the extent that it interprets the language of the "auto" exclusion in terms of tort law rather than traditional contractual analysis.

The general rules regarding the interpretation of an insurance policy do not differ from those controlling other contracts. (*Pre-Fab Transit Co. v. Northbrook Property & Casualty Insurance Co.* (1992), 235 Ill. App. 3d 103, 600 N.E.2d 866, *appeal denied* (1992), 147 Ill. 2d 637, 606 N.E.2d 1235.) In construing a policy, the court should neither distort the meaning of the words so as to reach a desired result nor invent ambiguities where none exist. Rather, the court should

examine the policy as a whole and interpret the words according to their plain, ordinary and popular meanings. (*International Minerals & Chemical Corp. v. Liberty Mutual Insurance Co.* (1988), 168 Ill. App. 3d 361, 522 N.E.2d 758, *appeal denied* (1988), 122 Ill. 2d 576, 530 N.E.2d 246; *Ansvar America Insurance Co. v. Hallberg* (1991), 209 Ill. App. 3d 206, 568 N.E.2d 77.) Any doubts in meaning will be resolved in favor of the insured; however, if the provisions of the policy are clear and unambiguous, the provisions will be applied as written. *United States Fire Insurance Co. v. Schnackenberg* (1981), 88 Ill. 2d 1, 429 N.E.2d 1203.

In addition, an insurance policy is not to be interpreted in a factual vacuum and without regard to the purpose for which the insurance was written. The paramount objective in construing a policy is to give effect to the intent of the parties as expressed by the terms of the agreement. *International Minerals & Chemical Corp. v. Liberty Mutual Insurance Co.* (1988), 168 Ill. App. 3d 361, 522 N.E.2d 758, *appeal denied* (1988), 122 Ill. 2d 576, 530 N.E.2d 246.

■ In the instant case, Zurich issued a commercial general liability policy to Oakley containing an "auto" exclusion which precludes coverage for bodily injury or property damage "arising out of" the "use" of an "auto." The purpose of this exclusion is related to the purpose of business liability insurance in general. Standard commercial liability policies are issued to cover all hazards incident to the operation of a business with the exception of certain excluded risks, including those involved in the ownership maintenance, use or entrustment of an "auto." The premium charged by the CGL insurer reflects the underwriting objective of placing automobile accidents beyond the scope of coverage. These latter risks involve unique hazards to which the general business of the insured is not subject. For that reason, they are generally covered as a special class by an automobile liability policy or, as in this case, a trucker's liability policy.

The underlying complaints at issue here allege that Oakley's employee was negligent in his "use," *i.e.*, *driving*, of a semi-tractor. These complaints further allege that Oakley itself was negligent in its supervision of that employee. Oakley's commercial liability policy, however, excludes coverage for bodily injury or property damage "arising out of" the "use" of an "auto." The commonly understood meaning of the terms "arising out of" the "use" in this context clearly precludes coverage directly for the employee's negligent driving of a motor vehicle. Similarly, the plain language of the "auto" exclusion precludes coverage for Oakley's negligent supervision. Such supervision also "arises" out of the employee's "use" of the vehicle because

the negligent supervision is derivative of, and dependent upon, the underlying negligent use of the vehicle. Oakley's negligent supervision simply cannot be divorced from its employee's negligent driving.[4]

In legal terms, the negligent use of the vehicle, which is directly excluded under the policy, is the nexus between the supervisor and the supervisee. Because the claim for negligent supervision is not independent of, but inextricably intertwined with, the employee's use of the truck, any breach by the employer to supervise such use is necessarily deemed to have arisen therefrom. The majority of decisions from other jurisdictions which have considered the identical issue in *factually* analogous situations have likewise held that the "auto" exclusion precludes coverage. (See, *e.g.*, *Scarfi v. Aetna Casualty & Surety Co.* (1989), 233 N.J. Super. 509, 559 A.2d 459; *Phillips v. Estate of Greenfield* (Okla. 1993), 859 P.2d 1101; *Love v. McDonough* (S.D. Miss. 1991), 758 F. Supp. 397, *aff'd* (5th Cir. 1991), 947 F.2d 1486; *Motorists Mutual Insurance Co. v. Kulp* (E.D. Pa. 1988), 688 F. Supp. 1033, *aff'd* (3d Cir. 1988), 866 F.2d 1411; *Mutual Service Casualty Insurance Co. v. Koenigs* (1983), 110 Wis. 2d 522, 329 N.W.2d 157; *Bankert v. Threshermen's Mutual Insurance Co.* (1983), 110 Wis. 2d 469, 329 N.W.2d 150; *American Universal Insurance Co. v. Cummings* (Me. 1984), 475 A.2d 1136; *Great Central Insurance Co. v. Roemmich* (S.D. 1980), 291 N.W.2d 772; *Allstate Insurance Co. v. Moraca* (1990), 244 N.J. Super. 5, 581 A.2d 510; *Farmers Insurance Group v. Nelsen* (1986), 78 Or. App. 213, 715 P.2d 492.) Accordingly, the claims of negligent supervision against Oakley are excluded from coverage under the "auto" exclusion.

■ In light of holding that the "auto" exclusion precludes coverage in this case for negligent supervision, and thus Zurich's rejection of Oakley's tender of defense was proper, we find that estoppel does not lie even though Zurich did not file an action for declaratory judgment. *Charles H. Eichelkraut & Sons, Inc. v. Bituminous Casualty Corp.* (1988), 166 Ill. App. 3d 550, 556, 519 N.E.2d 1180 ("[We] do not find that the cases go so far as to require the insurer in every situa-

---

[4]We emphasize that the employee's negligent "use," *i.e.*, the *driving* of a semi-tractor, is distinguishable from the situation where the motor vehicle is merely the *situs* of the injury. In this latter case, *e.g.*, where children are injured when playing on a parked automobile, the "auto" exclusion would not necessarily preclude coverage for claims of negligent supervision since the injury does not "arise out of" the "use" of the motor vehicle. The fact that a motor vehicle is involved is only incidental to the claim of negligent supervision. The liability would arise from nonvehicular conduct and would exist independent of the "use" of the vehicle.

tion to file a declaratory action or to defend the underlying suit against its insured when a reasonable reading of the complaint reveals no coverage, even potential, under the policy in issue").

For the foregoing reasons, we affirm the order of the circuit court.

Affirmed.

GORDON and McNULTY, JJ., concur.