BILLY F. FAULKNER, Plaintiff-Appellee, v. ALLSTATE LIFE INSURANCE COMPANY, Defendant-Appellant.

Fifth District    No. 5—96—0764

Opinion filed August 7, 1997.

Michael F. Dahlen and Kara L. Jones, both of Feirich/Mager/Green/ Ryan, of Carbondale, for appellant.

Robert P. Schulhof, of Carbondale, for appellee.

JUSTICE HOPKINS delivered the opinion of the court:

Defendant, Allstate Life Insurance Company, appeals from the October 15, 1996, order of the Jackson County circuit court in favor of plaintiff, Billy F. Faulkner. This case is on appeal to this court for the second time. In the first appeal, we reversed and remanded for a new trial before a different judge. *Faulkner v. Allstate Life Insurance Co.*, No. 5—95—0343 (May 3, 1996) (unpublished order under

Supreme Court Rule 23 (134 Ill. 2d R. 23)). On remand, the trial court found that plaintiff was covered under an accidental death and dismemberment policy issued by defendant. The trial court ordered defendant to pay plaintiff $50,000 plus the costs of the suit. In this appeal, defendant argues that the trial court's finding that plaintiff's injury was covered under the policy is against the manifest weight of the evidence. We affirm.

For the purpose of this appeal, we will reiterate only those facts relevant to this appeal. For a more complete procedural history and factual scenario, please refer to *Faulkner*, No. 5—95—0343 (May 3, 1996) (unpublished order under Supreme Court Rule 23).

Plaintiff suffers from diabetes and severe vascular disease. As a result of those conditions, plaintiff underwent surgeries to his left leg in 1988 and 1989. In 1990, plaintiff injured his left leg, which caused a blood clot to form in his leg. The clot was surgically removed, and plaintiff reported that his leg was doing much better when he met with his physician, Dr. Edwin L. Grogan, in May of 1991. On June 21, 1991, defendant twisted his ankle when trying to enter his truck. Surgery was performed on plaintiff's leg to repair occlusion or blockage of his blood vessels and clotting of the grafts on his leg from the previous surgeries. However, the leg could not be saved, and it was amputated above the knee on August 23, 1991.

The issue that was before the trial court and which is presented to this court for the second time is whether the amputation of plaintiff's leg is an injury as defined in the policy of insurance:

" 'Injury' means bodily injury caused by an accident occurring while the insurance is in force and which injury results, within 365 days of the accident, *directly and independently of all other causes*, in any of the losses to which the insurance applies, to wit, death, dismemberment and the total and irrecoverable loss of sight." (Emphasis added.)

Defendant argues that we should reconsider the order we entered in the first appeal and find that it is palpably erroneous. Prior to the first appeal, the trial court entered judgment in favor of defendant, finding in relevant part as follows:

"l. The relevant term of the policy, 'directly and independently of all other causes,' is not ambiguous and has no need for interpretation.

m. To be excluded from coverage 'the injury must have been caused solely by a proximate cause which is excluded under the policy.' Stated slightly differently, the amputation must have been caused 'directly and independently of all other causes.'

n. The testimony of Dr. Grogan that 'Mr. Faulkner would have

ended up with his leg amputated, regardless of whether or not he had had the incident[,]' [c]learly and unequivocally resolves the issue of whether the amputation was the result of the incident or of the medical condition of the plaintiff."

Plaintiff appealed to this court, and we rendered our first decision, reversing the trial court's judgment in favor of defendant. In resolving the first appeal, we held that the case of *Carlson v. New York Life Insurance Co.*, 76 Ill. App. 2d 187 (1966), was controlling. In our application of *Carlson* to the facts of this case, we held that "in order for Allstate to avoid liability in the instant case, it must show that the amputation was not proximately caused by the June 21, 1991, accident." *Faulkner*, Rule 23 order at 10. We determined, "[T]he issue is not whether the amputation was caused solely by the accident, but whether the amputation was caused solely by the preexisting condition, such that the June 21, 1991, accident was not a proximate cause." *Faulkner*, Rule 23 order at 12.

After we reversed the trial court's first order, the parties submitted the case to the trial court for a decision on the record without offering any additional evidence. On October 15, 1996, the trial court entered an order in favor of plaintiff, finding that the amputation of plaintiff's leg was not caused solely by his preexisting condition and that the June 21, 1991, accident was a proximate cause of the amputation. The court ordered defendant to pay plaintiff $50,000 under its policy of insurance. It is from this order that defendant appeals.

Defendant's argument that the trial court's 1996 order is against the manifest weight of the evidence consists of three parts: (1) the decision of this court in the first appeal is palpably erroneous and should be reversed on that basis; (2) even if our first decision is correct under the law, the trial court erred in finding that the June 21, 1991, accident was "a" proximate cause of the amputation, because the appropriate standard is not "a" proximate cause, but "the" proximate cause; and (3) under any interpretation of the law, the trial court's decision is against the manifest weight of the evidence. We will discuss each of these arguments in turn.

Defendant argues that our first decision in this case is palpably erroneous and subject to our reconsideration in that this case involves a contract of insurance for which contract law applies, not the tort-based proximate cause analysis we adopted from the *Carlson* decision. We find that our decision in the first appeal is not palpably erroneous, and, therefore, the ruling of that decision is the law of this case. See *Martin v. Federal Life Insurance Co.*, 164 Ill. App. 3d 820 (1987); *Sjostrom v. Sproule*, 49 Ill. App. 2d 451 (1964), *aff'd on other grounds*, 33 Ill. 2d 40, 210 N.E.2d 209 (1965).

■ Defendant argues that by applying tort principles to the construction of this contract of insurance, we failed to give the plain words of the policy their normal and everyday meaning, *i.e.*, we used construction aids outside the policy, which is not allowed unless the terms of the policy are ambiguous. Defendant is wrong. Use of a proximate cause analysis as set forth in numerous, relevant cases, including *Carlson*, is proper because the language of the policy drafted by defendant, and used in many other standard accidental death and dismemberment insurance policies, calls for such an analysis. The following decisions are instructive: *Carrothers v. Knights of Columbus*, 10 Ill. App. 3d 734 (1973), *Carlson*, 76 Ill. App. 2d 187, and *Kater v. United Insurance Co.*, 25 Ill. App. 2d 22 (1960). All of these decisions applied a proximate cause analysis to insurance policies with the same clause that is at issue in this case, that is, "directly and independently of all other causes".

In *Carlson*, the court found:

> "[T]he purpose of the insurance contract would be gravely thwarted if the clause with which we are concerned ['directly and independently of all other causes'] were read to exclude coverage for any loss except that resulting solely and exclusively from the accidental injury, without any other contributing cause. The policy must be construed in the light of the reasonable expectation and purpose of the ordinary man when making an ordinary contract."
> *Carlson*, 76 Ill. App. 2d at 196.

In construing the policy at issue therein, the *Carlson* court held that "[w]hether or not the accidental injury was the proximate cause of the resulting disability[ ] was a question of fact for the jury to determine." *Carlson*, 76 Ill. App. 2d at 197. In the case at bar, the trial court was the trier of fact, and it was the court's place to decide whether the June 1991 accident was the proximate cause of the amputation of plaintiff's leg.

■ Defendant next argues that our reliance in the first appeal upon the *Carlson* decision was misplaced, in that the court in *Carlson* relied upon the first district case of *Rebenstorf v. Metropolitan Life Insurance Co.*, 299 Ill. App. 71 (1939), which, according to defendant, "is no longer followed" in that district. We disagree.

The *Carlson* court concurred in the following ruling from the *Rebenstorf* case:

> " 'One may recover on an accident policy *** although the insured suffers from bodily infirmities. If the accident brought about conditions from which death resulted, the fact that the insured was ill, aged or infirm, or had bodily or mental infirmities, would not bar recovery provided the accident excited the bodily infirmity into

activity and death resulted.' " *Carlson*, 76 Ill. App. 2d at 195, quoting *Rebenstorf*, 299 Ill. App. at 84.

The above-quoted passage has not been explicitly or implicitly overruled by any case from any court, including the first district.

Defendant argues that the first district court in *Oakley Transport, Inc. v. Zurich Insurance Co.*, 271 Ill. App. 3d 716 (1995), "clearly held that tort principles had no place in the interpretation of an insurance policy's language." We disagree. In *Oakley Transport*, the court held that a clause excluding coverage in an insurance contract should not be interpreted in terms of the tort principles of joint and several liability, proximate cause, or intervening negligence. *Oakley Transport*, 271 Ill. App. 3d at 725. However, the *Oakley Transport* case did not cite to or criticize *Rebenstorf*, and it is distinguishable in that it was a declaratory judgment action, not a complaint for breach of contract as in the instant case. Moreover, the basic premise out of which the proximate cause analysis flows—that the underlying purpose of the contract is paramount—is followed by the court in *Oakley Transport*:

> "[A]n insurance policy is not to be interpreted in a factual vacuum and without regard to the purpose for which the insurance was written. The paramount objective in construing a policy is to give effect to the intent of the parties as expressed by the terms of the agreement." *Oakley Transport*, 271 Ill. App. 3d at 726.

We find our earlier reliance upon *Carlson*, which remains good law, proper. Thus, we need not consider defendant's arguments concerning case law from other jurisdictions. Our decision in the first appeal of this case is the law of the case herein.

■ Defendant next argues that even if the trial court was mandated to interpret the policy using proximate cause analysis, "the appropriate standard to apply was whether the twisted ankle [(the June 21, 1991, injury)] was 'the' rather than 'a' proximate cause of the amputation." In support of this argument, defendant contends that hornbook law requires an analysis in terms of "the" proximate cause, as in the singular and only, rather than "a" proximate cause, of which there may be more than one. We are not persuaded. Even under an insurance policy such as this, the terms of the contract are not overlooked by a finding that the accident was "a" proximate cause of the disability rather than "the" one and only proximate cause. See *Carrothers*, 10 Ill. App. 3d at 738; *Carlson*, 76 Ill. App. 2d at 196; *Kater*, 25 Ill. App. 2d at 30.

> "[T]here may be more than one proximate cause of an injury. A proximate cause of an injury is any cause which, in natural or probable sequence, produced the injury complained of. It need not

be the only cause, nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time[ ] which[,] in combination with it, causes the injury. See Illinois Pattern Jury Instruction (IPI) Civil, No. 15.01 (2d ed. 1971)." *United States Fidelity & Guaranty Co. v. State Farm Mutual Automobile Insurance Co.*, 152 Ill. App. 3d 46, 48 (1987).

We hold that an injury compensable under this accident policy may be proximately caused by an accident even where the insured was predisposed to the injury due to a preexisting illness or condition, as in the case at bar. The clause, "directly and independently of all other causes," is not synonymous with a finding that, for an injury to be compensable, it must be the result of an accident that is in no way related to a preexisting illness. Where the insured suffers from a preexisting condition that makes an accidental injury more likely, that accident may still lead "directly and independently of all other causes" to a compensable injury. If defendant had wanted to exclude from coverage injuries that occur to insureds with preexisting conditions, it could have done so. Since it did not, it cannot escape liability to plaintiff under this policy.

Since the available Illinois law is also clear on this issue, we do not address defendant's arguments on this issue regarding the law in other jurisdictions. For all of these reasons, the trial court did not err in finding that plaintiff's injury was covered under the policy issued by defendant.

■ Finally, defendant argues that under either contract law or proximate cause analysis, the trial court's order was against the manifest weight of the evidence. Defendant argues that plaintiff's physician, Dr. Grogan, in answering a questionnaire that defendant submitted to him, stated that, in his medical opinion, if plaintiff had not been suffering from the preexisting conditions of diabetes and severe vascular disease, then the accident alone would not have caused the amputation. Defendant argues that this is conclusive of the issue of whether the accident caused the amputation.

We disagree. When the record as a whole is considered, the trial court's finding is not against the manifest weight of the evidence. In Dr. Grogan's evidence deposition, he testified that the seemingly minor trauma, plaintiff twisting his ankle on June 21, 1991, contributed to the amputation, along with the blood clots and the vascular disease. Dr. Grogan explained that plaintiff's blood vessels were occluded, which was a natural, ongoing process that was caused by the vascular disease, but that the type of clotting that formed after the June 1991 accident was consistent with the trauma described by plaintiff. Dr. Grogan testified that even if plaintiff had not twisted

his ankle on June 21, 1991, plaintiff's leg would have been amputated at some point in time, due to the vascular disease, but that the amputation might not have happened as soon as it did. At one point, Dr. Grogan testified that the June 1991 accident did not directly cause the amputation and that, if it played any causative role, it was "a minor contributing factor." However, later in his testimony, Dr. Grogan testified that the June 1991 accident may have been a "significant" contributing factor to the amputation.

Since Dr. Grogan's testimony was somewhat inconsistent, it was up to the trial court as trier of fact to sort out those inconsistencies and decide what weight to give his testimony. See *Gilbert's Ethan Allen Gallery v. Ethan Allen, Inc.*, 251 Ill. App. 3d 17, 29 (1993), *aff'd on other grounds*, 162 Ill. 2d 99, 642 N.E.2d 470 (1994). The trial court's finding that the amputation of plaintiff's leg "was not caused solely by the pre[ ]existing condition, and that the accident of June 21, 1991, was a proximate cause of the amputation" is not against the manifest weight of the evidence.

For all of these reasons, we affirm the trial court's October 15, 1996, judgment.

Affirmed.

MAAG and CHAPMAN, JJ., concur.