NORTHBROOK PROPERTY AND CASUALTY INSURANCE COMPANY, Plaintiff-Appellee, v. TRANSPORTATION JOINT AGREEMENT, Crystal Lake Community Consolidated School District No. 47 and Crystal Lake Community High School District No. 155, *et al.*, Defendants-Appellants (Jon Anfinsen, a Minor, by his Father and Next Friend, David J. Anfinsen, *et al.*, Defendants).

Second District    No. 2—98—1252

Opinion filed December 22, 1999.

INGLIS, J., dissenting.

Steven H. Kuh, of Chicago, and Russell N. Brown, of Lustig & Brown, of Buffalo, New York, for appellant Westchester Fire Insurance Company.

Ellen D. Holzman and Wayne F. Plaza, both of Rooks, Pitts & Poust, of Chicago, for other appellants.

Fritz K. Huszagh and Christine L. Olson, both of Hinshaw & Culbertson, of Chicago, for appellee.

JUSTICE McLAREN delivered the opinion of the court:

Defendants Transportation Joint Agreement of School Districts No. 47 and No. 155 (TJA), Patricia Catencamp, and Westchester Fire Insurance Company (Westchester) appeal from the trial court's grant of summary judgment in favor of plaintiff Northbrook Property and Casualty Insurance Company (Northbrook) and its denial of the defendants' cross-motions for summary judgment. We reverse and remand.

Northbrook issued a commercial general liability policy to TJA on June 30, 1995. On October 25, 1995, a school bus driven by Catencamp was involved in an accident with a Metra train in Fox River Grove, Illinois, which resulted in 27 lawsuits against TJA and Catencamp filed by students and/or the families of students killed and injured in the collision. TJA and Catencamp tendered the defense of and sought indemnification from Northbrook for lawsuits under the general liability policy. Northbrook denied all insurance and refused to participate in the lawsuits, eventually filing a declaratory judgment action against TJA, Catencamp, Westchester (one of TJA's excess insurance carriers), and the complainants in the lawsuits. Northbrook, TJA, Catencamp, and Westchester all filed motions for summary judgment in the declaratory action; the court granted Northbrook's motion and denied the others. This appeal followed.

■ Defendants argue that the trial court erred in granting Northbrook's motion for summary judgment. Where the pleadings, depositions, and admissions on file, together with the affidavits, demonstrate that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. *McNamee v. State*, 173 Ill. 2d 433, 438 (1996). The review of a summary judgment ruling is an issue of law and is therefore a *de novo* review. *McNamee*, 173 Ill. 2d at 438. This court's function is to determine whether the trial court correctly found that no genuine issues of material fact existed and, if none did, whether the trial court

correctly entered judgment as a matter of law. *Lake County Public Building Comm'n v. City of Waukegan*, 273 Ill. App. 3d 15, 18 (1995).

■ An insurer's duty to defend arises where the complaint alleges facts that fall within, or potentially within, the policy's coverage. *Massachusetts Bay Insurance Co. v. Unique Presort Services, Inc.*, 287 Ill. App. 3d 741, 744 (1997). It is the allegations of the complaint, not the findings of the underlying litigation, that are dispositive of the duty to defend. *Massachusetts Bay*, 287 Ill. App. 3d at 744. An insurer may not justifiably refuse to defend an action against its insured unless it is clear from the face of the complaint that the allegations fail to state facts that bring the case within, or potentially within, the coverage of the policy. *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73 (1991). If the complaint raises multiple theories of recovery against the insured, the duty to defend arises even if only one such theory is within the potential coverage of the policy. *United States Fidelity*, 144 Ill. 2d at 73. The underlying complaints and the policy are to be liberally construed in favor of the insured, and any doubts or ambiguities must be resolved in the insured's favor. *United States Fidelity*, 144 Ill. 2d at 74.

The underlying lawsuits in this case allege improper driving against Catencamp and also allege against TJA:

"(1) that Defendants failed to adequately provide proper and sufficient training to its bus drivers, including Patricia Catencamp;

(2) that Defendants failed to adequately inform and educate its bus drivers, including Patricia Catencamp, of the bus routes and the hazards present on such routes;

(3) that Defendants failed [to] provide adequate route sheets to bus drivers;

(4) that Defendants failed to inspect routes and notify drivers of hazardous conditions;

(5) that Catencamp was not prepared or trained by the Schools to operate the school bus safely and prudently on the day of the accident;

(6) that Defendants failed to provide Patricia Catencamp with the proper training, experience, and qualifications;

(7) that Defendants failed to comply with federal, state and school district laws and regulations governing the conduct, training and procedures regarding the operation of school buses;

(8) that Defendants failed to instruct Patricia Catencamp regarding the route to which she was assigned on October 25, 1995;

(9) that Defendants failed to supervise properly the bus drivers and their supervisors;

(10) that Defendants failed to warn the plaintiff's decedent and the general public that Patricia Catencamp was unfamiliar with the route, inexperienced and unqualified;

(11) that Defendants failed to act as would a reasonable and prudent person under the same circumstances."

■ Northbrook denied insurance and participation in the lawsuit based on the following provision contained in the policy issued to TJA which excludes coverage for:

" '[b]odily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto,' or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and 'loading or unloading.' "

While it is not ambiguous as a matter of law, the phrase "arising out of" in an exclusionary clause of an insurance policy should be given a limited interpretation in favor of the insured. *Allstate Insurance Co. v. Smiley*, 276 Ill. App. 3d 971, 978 (1995). In ordinary usage, "arise" means "[t]o spring up, originate, to come into being or notice." See Black's Law Dictionary 108 (6th ed. 1990); *Smiley*, 276 Ill. App. 3d at 978.

Northbrook contends that the policy exclusion bars coverage because the injuries to the 27 children resulted from the use or operation of the bus and because the injuries could not have occurred without the operation or use of the bus. We disagree.

■ It is well established that, to be totally excluded from coverage under an insurance policy, an injury must have been caused *solely* by a proximate cause excluded under the policy. *United States Fidelity & Guaranty Co. v. State Farm Mutual Automobile Insurance Co.*, 152 Ill. App. 3d 46, 48 (1987) (*USF&G*).

" '[T]here may be more than one proximate cause of an injury. A proximate cause of an injury is any cause which, in natural or probable sequence, produced the injury complained of. It need not be the only cause, nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time[ ] which[,] in combination with it, causes the injury.' " *Faulkner v. Allstate Life Insurance Co.*, 291 Ill. App. 3d 706, 711-12 (1997), quoting *USF&G*, 152 Ill. App. 3d at 48.

Accordingly, an injury will be excluded from an insurance policy only if the injury's sole proximate cause was excluded under the policy. *USF&G*, 152 Ill. App. 3d at 48.

For example, in *USF&G*, 152 Ill. App. 3d 46, an insurance company argued that its automobile exclusion provision excluded coverage in a case where a child was injured after falling from a station wagon owned and operated by a day-care center insured by USF&G. *USF&G*, 152 Ill. App. 3d at 48. The court held that, since one of the proximate causes could have been the negligent supervision of the day-care worker, USF&G failed to prove that the sole proximate

cause of the injury was the "use, operation, or maintenance" of the station wagon. *USF&G*, 152 Ill. App. 3d at 49. Thus, the court held that the automobile exclusion did not bar coverage. *USF&G*, 152 Ill. App. 3d at 49.

■ However, it is also well established that, if an alleged proximate cause is derivative of, and dependant upon, the underlying negligent use of a vehicle, an automobile exclusion may bar coverage. See *Massachusetts Bay*, 287 Ill. App. 3d at 745. For example, in *Massachusetts Bay*, an insured argued that an automobile exclusion did not bar coverage of injuries arising out of an automobile collision. The underlying complaint alleged that the insured's employee was driving a truck while under the influence of cannabis at the time of the collision. The underlying complaint also alleged negligence on the part of the insured for failure to test its employee for drugs pursuant to federal drug-testing regulations. This latter count was wholly dependent on the alleged negligent operation of the vehicle; that is, but for the employee's/driver's negligence, the accident would not have occurred. Thus, this court held that the automobile exclusion barred coverage. *Massachusetts Bay*, 287 Ill. App. 3d at 746-47.

To completely understand this reasoning, we must compare the analysis in *Massachusetts Bay* with the appellate court's analysis of *USF&G* in *Allstate Insurance Co. v. Pruitt*, 177 Ill. App. 3d 407 (1988). In *Pruitt*, the appellate court held that an auto exclusion clause barred coverage to an insured whose minor son, while riding a motorbike, struck the plaintiff. The underlying complaint alleged that the son negligently operated the motorbike and that the insured (father) negligently supervised his son. In distinguishing the *Pruitt* case from *USF&G*, the *Pruitt* court explained that the exclusion in *USF&G* did not bar recovery because the underlying complaint in *USF&G* "described acts of alleged negligence and theories of recovery *wholly independent* from those relating to the allegedly negligent operation of the automobile." (Emphasis added.) *Pruitt*, 177 Ill. App. 3d at 411. Conversely, the underlying complaint in *Pruitt* essentially alleged that the father could be found liable for negligent supervision only if the son was also found negligent. *Pruitt*, 177 Ill. App. 3d at 411.

■ In the case at bar, the plaintiffs pleaded counts that were wholly independent of any negligent operation of the bus. The underlying plaintiffs in this case alleged in part that the accident was proximately caused by TJA's failure to properly inspect routes and notify drivers of hazardous conditions, adequately inform and educate the bus drivers of the bus routes and hazardous conditions, provide adequate route sheets to the drivers, and act as would a reasonable and prudent person under the same circumstances. These allegations have nothing

to do with the employee's/driver's negligent "use" of the bus. TJA could be found liable under any of these counts regardless of whether Catencamp is also found negligent.

TJA's duty to properly plan the bus routes is also independent of ownership, maintenance, or entrustment of the bus. A variety of factors, such as the number of buses and drivers available, the distance each bus must travel, the number of students in each neighborhood, bus capacity, and traffic patterns must be considered when bus routes are planned. See *D.M. v. National School Bus Service, Inc.*, 305 Ill. App. 3d 735, 739 (1999). The underlying complaint herein alleged negligence and theories of recovery against TJA wholly independent from those relating to the allegedly negligent operation of the vehicle. See *Allstate Insurance Co. v. Pruitt*, 177 Ill. App. 3d 407, 411 (1988), analyzing *United States Fidelity & Guaranty Co. v. State Farm Mutual Automobile Insurance Co.*, 107 Ill. App. 3d 190 (1982). It is possible that the injuries and deaths would never have occurred but for TJA's negligent planning and supervision of the bus routes and negligent training of Catencamp. The injuries in the underlying case may "arise" (spring up, originate, come into being) from multiple, separate proximate causes. TJA, Catencamp, neither, or both may be found to have breached some duty owed to the plaintiffs in the underlying case. This is, in part, a question of proximate cause, relating to breaches of different alleged duties. Since the underlying complaint alleges more than one proximate cause and some of the alleged proximate causes are wholly independent of the driver's negligence, Northbrook failed to establish that the alleged proximate cause of the injury was solely the "use, operation, or maintenance" of the bus. See *USF&G*, 152 Ill. App. 3d at 49. Therefore, giving the exclusion a limited interpretation in the insured's favor (see *Allstate*, 276 Ill. App. 3d at 978), we conclude that the underlying complaint alleged facts that potentially fall within the policy's coverage. Accordingly, the trial court erred in granting summary judgment in favor of Northbrook. Northbrook owes a duty to defend, and summary judgment should be entered in favor of the defendants.

The dissent believes that the negligent routing of the bus was excluded by the policy because the policy excluded coverage for accidents arising out of the "use" of the bus. Thus, the dissent believes that the word "use" includes routing. However, this interpretation gives no meaning and makes surplusage of the other expressly listed auto exclusions, *i.e.*, "operation," "maintenance," and "entrustment." This is contrary to Illinois rules of contract construction. See *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 123 (1992). The dissent has let the word "use" subsume activities such as routing that have nothing to do with the actual use of the bus.

The dissent cites to *Smiley*, 276 Ill. App. 3d 971, to support its position. In *Smiley*, this court held that a business exclusion policy barred coverage for a negligence action filed after a child drowned in Smiley's swimming pool. However, *Smiley*, like *Massachusetts Bay*, 287 Ill. App. 3d 741, is distinguishable. In *Smiley*, the business exclusion barred coverage because there the court determined that the alleged private negligent supervision was derivative of the negligent supervision of the business. Thus, *Smiley* is not controlling here.

The dissent's interpretation also ignores another well-established rule of insurance contract construction recently stated by our supreme court: "Provisions that limit or exclude coverage are to be construed liberally in favor of the insured and against the insurer." *State Farm Mutual Automobile Insurance Co. v. Villicana*, 181 Ill. 2d 436, 442 (1998). Thus, insurance policy exclusions must be read narrowly rather than broadly. *National Union Fire Insurance Co. v. Glenview Park District*, 158 Ill. 2d 116, 123 (1994). By concluding that "use" includes routing, the dissent disregards this well-established principle. A narrow interpretation results in the conclusion that "use" does not, include, *inter alia*, routing and, thus, the plaintiff's cause of action is not barred by the exclusion at issue.

The duty to defend is broader than the duty to indemnify. *Massachusetts Bay*, 287 Ill. App. 3d at 747. As a determination of the duty to indemnify can only be made after a trial on the merits in the underlying cause of action (see *Massachusetts Bay*, 287 Ill. App. 3d at 747), it is premature to find such a duty now. Therefore, we decline defendants' prayer for such relief.

For these reasons, the judgment of the circuit court of McHenry County is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

GALASSO, J., concurs.

JUSTICE INGLIS, dissenting:
The majority's analysis rests on the proposition that, because it is foreseeable that another proximate cause exists that is independent of the use of the "auto," then a duty to defend is triggered regardless of whether there is bodily injury arising from the use of the "auto." I believe that the majority's analysis is flawed for several reasons.

First, the focus of the majority's analysis is based on tort law when the focus should be based on a contractual analysis. The majority accepts the same argument in this case that we rejected in *Allstate*

*Insurance Co. v. Smiley*, 276 Ill. App. 3d 971 (1995). In *Smiley*, Allstate issued a homeowner's policy that excluded bodily injury arising out of the past or present business activities of an insured. The insured, Smiley, ran a day-care business out of her home. A child for whom Smiley cared fell into Smiley's swimming pool and drowned. The underlying complaint alleged that Smiley negligently supervised the child, negligently failed to keep him away from the pool, negligently created a dangerous condition, and negligently failed to provide adequate locks. Smiley argued that Allstate owed coverage because the complaint alleged separate proximate causes of the child's injuries that did not arise out of her business activities. In rejecting this argument, we concluded that, regardless of how the defendants attempted to characterize Smiley's actions, the child's death "originated or came about" from the day-care services Smiley was paid to provide. *Smiley*, 276 Ill. App. 3d at 979. In reaching this conclusion, we also found that importing tort principles of proximate cause into the analysis of an insurance policy is inappropriate because the issue before a court ruling on a complaint for declaratory judgment is the interpretation of the insurance policy in accordance with the plain meaning of the policy. *Smiley*, 276 Ill. App. 3d at 982. See also *Oakley Transport, Inc. v. Zurich Insurance Co.*, 271 Ill. App. 3d 716, 725 (1995). Within the plain meaning of the policy at issue in the present case, I believe that it is clear that TJA's negligent route planning "arises" out of the bus driver's "use" of the bus.

Similarly, by focusing on the separate issues of proximate causation and ignoring traditional contract principles, the majority appears to place the cart before the horse and fails to recognize that, at root, the complaint is based on the auto accident. TJA's negligent route planning "arises" out of the bus driver's "use" of the bus because the negligent route planning is derivative of, and dependent upon, the underlying "use" of the bus. If the bus driver had not been operating the bus, there would have been no accident and plaintiffs would have no basis upon which to assert any other theory of negligence against TJA. In other words, a theory of negligent routing could not be asserted unless there was an injury arising from a bus accident.

The majority finds that *United States Fidelity & Guaranty Co. v. State Farm Mutual Automobile Insurance Co.*, 152 Ill. App. 3d 46 (1987), illustrates its theory that the underlying allegations can be separated from the "use" of the bus. However, I fail to see how this case supports the majority's position. There, the negligent supervision did not arise from the use of the auto since negligent supervision could result in a child's being injured anywhere and not due to the use of the auto. In this case, the allegations of planning cannot be so

neatly separated or divorced from the actual use of the bus because planning a bus route cannot occur in the absence of using the bus.

Finally, by conducting a tort analysis instead of a contractual analysis, the majority loses sight of the fact that an insurance policy is not to be interpreted in a factual vacuum and without regard to the purpose for which the insurance contract was written.

> "The purpose of [the] exclusion is related to the purpose of business liability insurance in general. Standard commercial liability policies are issued to cover all hazards incident to the operation of a business with the exception of certain excluded risks, including those involved in the ownership[,] maintenance, use or entrustment of an 'auto.' The premium charged by the [comprehensive general liability] insurer reflects the underwriting objective of placing automobile accidents beyond the scope of coverage. These latter risks involve unique hazards to which the general business of the insured is not subject. For that reason, they are generally covered as a special class by an automobile liability policy ***." *Oakley*, 271 Ill. App. 3d at 726.

The paramount objective in construing a policy is to give effect to the intent of the parties as expressed by the terms of the agreement. *Oakley*, 271 Ill. App. 3d at 726. By finding a duty to defend, the majority ignores that the parties did not intend for this policy to provide coverage for injuries arising from auto accidents.

In conclusion, I believe that the majority ignores the principles of contract law, artificially and arbitrarily separates the planning of the bus route when this is simply derivative of the use of the bus, and frustrates rather than gives effect to the parties' intent as expressed by the plain language and ordinary meaning of the insurance policy. Accordingly, I would affirm the judgment of the trial court and, therefore, I respectfully dissent.