818 So.2d 524 (2001)
ALLSTATE INDEMNITY COMPANY, Appellant,
v.
Lesley Armstrong WISE a/k/a Lesley Armstrong, John Richard Jablon, Jr., Cathy Burkholder, and Van McArthur Brown, Appellees.
No. 2D99-1646.
District Court of Appeal of Florida, Second District.
May 30, 2001.
Rehearing Denied July 24, 2001.
Stuart J. Freeman of Brasfield, Fuller, Freeman, Lovell & O'Hern, P.A., St. Petersburg, for Appellant.
B. Larry Smith, St. Petersburg, for Appellees John Richard Jablon, Jr. and Cathy Burkholder.
F. James Bischoff of F. James Bischoff, P.A., St. Petersburg, for Appellee Van McArthur Brown.
No appearance for Appellee Lesley Armstrong.
Dock A. Blanchard of Blanchard, Merriam, Adel & Kirkland, P.A., Ocala, for The Academy of Florida Trial Lawyers, Amicus Curiae.
NORTHCUTT, Judge.
Allstate Indemnity Company complains of the circuit court's refusal to declare that *525 the appellees' injury claims were excluded from coverage under an automobile liability policy issued by Allstate. We affirm.
Allstate's insured, Lesley Armstrong, led a state trooper on a bizarre automobile chase that began when the trooper tried to apprehend Armstrong on a theft charge. In the end, Armstrong was charged with fleeing and eluding a law enforcement officer, reckless driving and running a stop sign. During the episode Armstrong was involved in two motor vehicle accidents. In the first, she lost control of her automobile when she applied her brakes at a crowded intersection. She struck a truck in which John Jablon and Cathy Burkholder were riding. Armstrong managed to drive away from the accident scene, still in flight from the state trooper. As the chase continued, she ran a stop sign and struck a car driven by Van Brown.
Jablon, Burkholder and Brown asserted claims under the bodily injury liability portion of Armstrong's automobile insurance policy. In response, Allstate sued for a declaratory judgment that the claims were not covered by virtue of a policy exclusion for intentional acts. That language reads:
ALLSTATE will not pay for any damages an insured person is legally obligated to pay because of:
9. Bodily injury or property damage which may reasonably be expected to result from the intentional or criminal acts of an insured person or which are in fact intended by an insured person.
Following a bench trial, the circuit court found that although Armstrong was intentionally fleeing from the state trooper when the first accident occurred, there was no evidence that she intentionally drove her vehicle into the truck occupied by Jablon and Burkholder. Similarly, the court determined that there was no evidence that Armstrong intended to collide with Brown when she ran the stop sign. Citing the Florida Supreme Court's decision in Prudential Property & Casualty Insurance Co. v. Swindal, 622 So.2d 467 (Fla. 1993), the court held that under this subjective test the policy exclusion did not apply. It rendered judgment against Allstate.
In Swindal, our supreme court reaffirmed that Florida law requires both an intent to act and a specific intent to injure in order to bring a loss within the ambit of an intentional act coverage exclusion. There, the intentional act of pointing a gun at the victim coupled with the intent to injure would trigger the exclusion clause. But liability coverage would lie if the factfinder concluded that the shooter's act was "accidental," i.e., that he lacked the intent to injure. The court declared that neither Landis v. Allstate Insurance Co., 546 So.2d 1051 (Fla.1989), nor State Farm Fire & Casualty Co. v. Marshall, 554 So.2d 504 (Fla.1989), had changed the law. In Landis, the court held that an intentional injury exclusion clause excluded coverage for injuries suffered by children who were sexually molested while under the care of the insured because it found that an intent to injure is inherent in the act of sexually abusing a child. Marshall held that an intentional injury exclusion clause excluded coverage where the insured acted in self defense when he hit his attacker in the head with a gun.
The Swindal court, recounted that application of a subjective test to determine the operation of an intentional acts exclusion is well established in Florida:
Florida law has long followed the general rule that tort law principles do not control judicial construction of insurance contracts. Insurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties. Ambiguities are interpreted liberally in favor of the insured and *526 strictly against the insurer who prepared the policy. Thus, intentional act exclusions are limited to the express terms of the policies and do not exclude coverage for injuries more broadly deemed under tort law principles to be consequences flowing from the insured's intentional acts.
Swindal, 622 So.2d at 470 (citations omitted). See also Allstate Ins. Co. v. Travers, 703 F.Supp. 911 (N.D.Fla.1988) (holding that insured's subjective intent to cause result must be shown in order for injury to be deemed "intentional injury" under exclusion).
Citing the contract interpretation principles recited in Swindal, Allstate points out that the terms in its exclusionary clause differ from the policy language in that case. In Swindal the policy excluded coverage for injury or damage "which is expected or intended by the insured." Swindal v. Prudential Prop. & Cas. Ins. Co., 599 So.2d 1314, 1318 (Fla. 2d DCA 1992). Allstate contends that its exclusion for injury or damage "which may reasonably be expected to result" from intentional "or criminal acts" must be effective even if the insured did not subjectively intend to injure the accident victims. In support of its argument Allstate points to our decision in Orear v. Allstate Insurance Co., 619 So.2d 974 (Fla. 2d DCA 1993). That case involved an exclusionary clause identical to this one, applied to a claimant who was injured while "slam dancing" in the company of the insured. Although we reversed a summary judgment in favor of the insurer, we appeared to give credence to the interpretation advanced by Allstate in this case. "We conclude there remains a material question of fact. Coverage can not be decided without determining if the actions of the insured were intended or could reasonably be expected to result in bodily injury." Orear, 619 So.2d at 975.
It is significant, however, that Orear involved a homeowners policy, as did Swindal and much of the case law addressing the scope of such exclusionary clauses. The interpretation of an automobile liability policy, such as in this case, necessarily involves consideration of strong public policy concerns that do not apply in the context of homeowners insurance. The public policy of this state strictly enforces minimum levels of insurance to protect the public. Our financial responsibility law, chapter 324, Florida Statutes (1995), declares:
It is the intent of this chapter to recognize the existing privilege to own or operate a motor vehicle on the public streets and highways of this state when such vehicles are used with due consideration for others and their property, and to promote safety and provide financial security requirements for such owners or operators whose responsibility it is to recompense others for injury to person or property caused by the operation of a motor vehicle. Therefore, it is required herein that the operator of a motor vehicle involved in a crash or convicted of certain traffic offenses meeting the operative provisions of s. 324.051(2) shall respond for such damages and show proof of financial ability to respond for damages in future accidents as a requisite to his or her future exercise of such privileges.
§ 324.011, Fla. Stat. (1995) (emphasis supplied). The financial responsibility laws are designed to protect the public from losses resulting from ownership and operation of motor vehicles, up to specified minimum amounts per person and per accident. See Ins. Co. of N. America v. Avis Rent-A-Car Sys., Inc., 348 So.2d 1149 (Fla.1977). An insurance policy procured *527 to comply with the Financial Responsibility Law is "an insurance policy for the benefit of the public using the highways of this State. Therefore, it may not contain exclusions which destroy the effectiveness of the policy as to any substantial segment of that public." Makris v. State Farm Mut. Auto. Ins. Co., 267 So.2d 105, 108 (Fla. 3d DCA 1972).
For this reason, the case before us is not strictly controlled by application of the contract principles recited in Swindal and espoused by Allstate. Indeed, courts in other states have been reluctant to apply criminal acts exclusions when examined in light of the public policy concerns inherent in automobile liability policies. See, e.g., Farm Bureau Mut. Ins. Co. v. Blood, 230 Mich.App. 58, 583 N.W.2d 476, 478-79 (1998) (finding exclusion for damages arising out of criminal acts ambiguous; coverage upheld under farm owners' liability policy for bodily injury and property damage arising from automobile accident); Mendoza v. Rivera-Chavez, 88 Wash.App. 261, 945 P.2d 232, 236-237 (1997) (declining to uphold felony exclusion in automobile insurance policy); Allstate Ins. Co. v. Peasley, 80 Wash.App. 565, 910 P.2d 483, 485 (1996) (when applying criminal acts exclusion, drew distinction between homeowners insurance and public policy favoring coverage in automobile insurance cases).
In Sledge v. Continental Casualty Co., 639 So.2d 805, 812 (La.Ct.App.1994), the court held that an automobile policy coverage exclusion for injury or damage arising out of an "act committed in violation of a law or ordinance" could be applied only to acts in violation of criminal law and that normally require specific or general intent. The court observed that a literal application of the policy language "would effectively deny coverage for all acts incidentally and technically constituting an infraction of the statutory `rules of the road'...." Id. Noting that "a policyholder would normally not expect the instant exclusion to control in reference to speeding, running a stop sign, or failing to maintain control," the court declared that the expansive language of the coverage exclusion clearly conflicted with Louisiana's public policy that automobile liability insurance should protect innocent accident victims. Id.
We, too, conclude that Allstate's expansive intentional acts exclusion, if strictly applied, would contravene the public policy behind the financial responsibility laws.
Affirmed.
CAMPBELL, MONTEREY, (Senior) Judge, Concurs.
ALTENBERND, A.C.J., Dissents with opinion.
ALTENBERND, Acting Chief Judge, Dissenting.
I wish that I could concur in the majority's thoughtful opinion. I fully agree that this "intentional or criminal acts" exclusion should be contrary to both the public policy and the law of Florida. This exclusion gives Allstate the option to deny coverage in all cases of injury or death occurring in accidents where the tortfeasor is guilty of reckless driving or DUI.
I dissent for three reasons. First, this exclusion is not the much litigated "intentional injury exclusion" discussed in Prudential Property & Casualty Insurance Co. v. Swindal, 622 So.2d 467 (Fla.1993).[1] *528 It is a new creation, a "reasonably expected injury resulting from intentional or criminal act exclusion." Indeed, this new exclusion would appear to have been written in response to the judicial interpretations placed upon the older exclusion. By adding a foreseeability concept to this new exclusion, Allstate clearly intends to exclude coverage for more claims that arise from the criminal conduct of its insureds than would be permitted under the older exclusion. This exclusion does not appear to be so ambiguous as to be unenforceable. Traditionally, insurance companies have been allowed to deny coverage for an insured's criminal conduct and even barred from paying indemnity to the insured when the damages were the known and necessary consequences of the criminal act. See Everglades Marina, Inc. v. Am. E. Dev. Corp., 374 So.2d 517 (Fla.1979). In addition, we have allowed this new exclusion to create an issue of reasonableness in Orear v. Allstate Insurance Co., 619 So.2d 974, 976 (Fla. 2d DCA 1993). I reluctantly conclude that a trier of fact must determine, using an objective standard, whether the injuries in this case were the reasonably expected injuries excluded by Allstate's policy. Because the trial court did not apply the correct law, I would reverse this case and remand for reconsideration.
Second, this case is not directly controlled by Florida's Financial Responsibility Act, chapter 324, Florida Statutes (1995). Financial responsibility laws vary from state to state, but these laws can be divided roughly into two categories. Some states require all car owners to have compulsory bodily injury liability insurance of certain minimum limits.[2] Florida abandoned this approach to financial responsibility in 1977. See ch. 77-468, § 31, Laws of Fla. Other states, now including Florida, compel bodily injury liability insurance only for drivers who have had an accident or some traffic infraction that demonstrates they are high-risk drivers. See ch. 324.
There is no dispute that the policy involved in this case was not certified as a policy issued to a bad driver to satisfy the financial responsibility requirements of section 324.011. I am inclined to believe that if this policy had included such certification, this court would be authorized to override this exclusion. Likewise, Florida law does compel family automobiles to have $10,000 of compulsory liability insurance to cover property damage.[3]See § 627.7275, Fla. Stat. (2000). Thus, I agree that Allstate could not enforce this exclusion for the first $10,000 of property damage because of our financial responsibility laws. Property damage, however, is *529 not at issue today. Thus, chapter 324 and Florida's financial responsibility law simply have no direct application.
Third, the public policies announced in the Financial Responsibility Act and in Florida's insurance code do not permit this court to override this exclusion. About forty years ago, the Florida Legislature began to emphasize first-party insurance as this state's approach to compensation for bodily injuries arising out of automobile accidents involving family automobiles. This policy shift was first reflected in the creation of highly regulated uninsured motorist coverage. See ch. 61-175, Laws of Fla. (now codified at § 627.727, Fla. Stat. (2000)). The shift was even more pronounced when the legislature introduced no-fault concepts by passing the Florida Automobile Reparations Reform Act in 1971. See ch. 71-252, Laws of Fla. (now codified at § 627.736, Fla. Stat. (2000)). The public policy shift was completed in 1977 when the state abandoned compulsory bodily injury liability insurance in favor of compulsory first-party no-fault coverage. See ch. 77-468, Laws of Fla. (now codified at § 627.730-.7405, Fla. Stat. (2000)).
At this time, Florida statutes authorize minimal regulation of the content of a family automobile liability insurance policy. Even the Department of Insurance has very little power to disapprove the contents of the standard family automobile insurance contracts used by authorized insurance companies in this state. See § 627.411, Fla. Stat. (2000).
Instead of regulating the content of these policies, the legislature has mandated that the insurance policies be "readable." See § 627.4145, Fla. Stat. (2000). The legislature has apparently concluded that the forces of the marketplace will regulate the content of these policies so long as the purchaser can read and understand the coverage being purchased. Although the marketplace may be an adequate safeguard for the content of commercial insurance policies purchased by corporations with professional risk managers, I must admit I question whether the marketplace provides adequate protection to the average purchaser of family automobile liability coverage. Once again, I can question these policies, but only the legislature can change them.
The need for adequate family automobile liability insurance is heightened by Florida's dangerous instrumentality doctrine. At the dawn of the automobile era, when cars were still a luxury owned by few, the Florida Supreme Court held that an automobile was a dangerous instrumentality. See S. Cotton Oil Co. v. Anderson, 80 Fla. 441, 86 So. 629 (1920). This holding, apparently unique to Florida, created needed protection for the victims of automobile accidents in an era predating concepts of financial responsibility. See Aurbach v. Gallina, 753 So.2d 60, 62 (Fla. 2000). Today, as a result of Southern Cotton Oil, a husband and wife who jointly own a car have unlimited liability for its use by any authorized driver,[4] including the family's teenage children.[5]See Aurbach, 753 So.2d at 62.
As a result of the dangerous instrumentality doctrine, exclusions like the one involved in this case have the potential to be *530 devastating for a family. The facts in this case involve serious, atypical criminal misconduct. However, a family purchasing automobile insurance needs to understand the types of claims that Allstate has the option to deny as a result of this exclusion.
Since 1974, most traffic violations have been classified as civil infractions. See § 318.12, Fla. Stat. (2000). However, the legislature has wisely decided to classify DUI and reckless driving as criminal offenses precisely because they are "reasonably expected" to result in bodily injury or property damage. See § 316.192, .193, Fla. Stat. (2000). Each holiday season, the Florida Highway Patrol reports on the high percentage of accidents with fatalities that are caused by drunk driving or reckless driving. Allstate has positioned itself to deny coverage for any claim where the death or bodily injury is caused by a drunk or reckless driver. As an insured, you have no guaranty of protection from Allstate for any claim involving a criminal violation of the Florida Uniform Traffic Control Law.
Of equal or greater importance, this exclusion denies protection if the injury is reasonably expected as a result of the criminal act of "an insured," not "the insured." This means that a husband and wife may have no coverage for their liability under the dangerous instrumentality doctrine when a teenage child kills someone while driving recklessly or while drunk. Allstate has effectively given itself the option to deny coverage for many major liability claims with no apparent disclosure to the consumer beyond the "readable" language of the exclusion and with no obvious reduction in premium.
Thus, although I dissent in this case, my heart is with the majority. The legislature would do the families of this state a service if it reviewed the need for legislation regulating the content of family automobile liability insurance policies.
NOTES
[1] For a discussion of case law addressing the more common intentional injury exclusion, see James L. Rigelhaupt, Jr., Annotation, Criminal Conviction as Rendering Conduct for Which Insured Convicted Within Provision of Liability Insurance Policy Expressly Excluding Coverage for Damage or Injury Intended or Expected by Insured, 35 A.L.R.4th 1063 (1985); Johnny Parker, The Wacky World of Collision and Comprehensive Coverages: Intentional Injury and Illegal Activity Exclusions, 79 Neb. L.Rev. 75, 94-98 (2000).
[2] The out-of-state cases cited in the majority opinion that discuss the relevance of financial responsibility laws all appear to come from states that mandate compulsory liability insurance. Michigan requires both personal injury and residual liability insurance. See Mich. Comp. Laws § 500.3101, .3102. Washington requires liability insurance. See Wash. Rev.Code § 46.30.020 (effective 1990). Louisiana mandates compulsory liability insurance. See La.Rev.Stat. Ann. § 32.861 (1990); Sledge v. Cont'l Cas. Co., 639 So.2d 805, 812 (La.Ct.App.1994).
[3] Why the Florida Legislature has chosen to protect only the property of victims of automobile accidents, but not their bodies and their lives, is a mystery to me. But it is the legislature's job, not mine, to establish these public policies. Perhaps the legislature created this mandatory coverage because its earlier attempt to create a no-fault property damage requirement was declared unconstitutional. See Kluger v. White, 281 So.2d 1 (Fla.1973).
[4] They are not responsible for many minor accidents that do not result in permanent injuries, but they have uncapped liability for all significant accidents. See § 627.737, Fla. Stat. (2000).
[5] The legislature has modified the dangerous instrumentality doctrine for the benefit of the large car rental and leasing companies, but it has never reduced the burden this doctrine places upon the typical Florida family. See § 324.021(9), Fla. Stat. (2000).