JEREMY BOHNER, Plaintiff-Appellee, v. ACE AMERICAN INSURANCE COMPANY, Defendant-Appellant.

Second District   No. 2—05—0020

Opinion filed August 26, 2005.

McLAREN, J., dissenting.

Tina M. Bird and Christina M. Berish, both of FagelHaber, L.L.C., of Chicago, for appellant.

Jason S. Marks, of Noonan, Perillo & Polenzani, Ltd., of Waukegan, for appellee.

JUSTICE GILLERAN JOHNSON delivered the opinion of the court:

The plaintiff, Jeremy Bohner, was involved in a one-car automobile accident while driving under the influence of alcohol. The defendant, Ace American Insurance Co., refused to cover the loss of the plaintiff's

vehicle, due to an exclusion in the plaintiff's insurance policy for criminal or illegal acts. The plaintiff then filed a breach of contract action. The defendant appeals the December 9, 2004, order of the circuit court of Lake County granting the plaintiff's motion for summary judgment and denying its motion for summary judgment. We reverse.

On August 24, 2002, the plaintiff purchased a GMC Sonoma from Anthony Pontiac in Gurnee. The plaintiff financed the vehicle through US Bank. Also on August 24, 2002, the plaintiff purchased an "auto gap" insurance policy from the defendant. The policy provided that in the event that the plaintiff's vehicle was in an accident that resulted in a total loss, the defendant would pay the difference between the fair market value of the vehicle and the outstanding loan amount. The policy excluded loss or damage "arising directly or indirectly out of any dishonest, fraudulent, criminal, or illegal act by [the plaintiff or his agents]."

On February 8, 2004, the plaintiff was in an automobile accident that resulted in a total loss of his vehicle. The plaintiff was charged with driving under the influence (DUI) of alcohol at the time of the accident. Subsequently, the plaintiff pleaded guilty to the DUI charge and received one year of court supervision.

The plaintiff sought $6,994.61 from the defendant, the difference between the fair market value of the vehicle and the amount owed to US Bank. The defendant denied the plaintiff's claim, reasoning that the plaintiff's policy did not cover loss or damage that arose from the plaintiff driving under the influence, a criminal act.

On June 2, 2004, the plaintiff filed a breach of contract action against the defendant. On October 18, 2004, the plaintiff and the defendant filed cross-motions for summary judgment. On December 9, 2004, the trial court granted the plaintiff's motion for summary judgment and denied the defendant's motion for summary judgment. The defendant filed a timely notice of appeal.

On appeal, the defendant argues that the trial court erred in granting the plaintiff's motion for summary judgment and denying its motion for summary judgment. Summary judgment is a drastic means of disposing of litigation and, therefore, should be granted only when the "pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 2004); *Happel v. Walmart Stores, Inc.*, 199 Ill. 2d 179, 186 (2002). When ruling on a motion for summary judgment, the trial court should consider the pleadings, depositions, admissions, and affidavits in the light most favorable to the nonmoving party. *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 483

(1998). "Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). Where a reasonable person could draw divergent inferences from the undisputed facts, summary judgment should be denied. *Pyne v. Witmer*, 129 Ill. 2d 351, 358 (1989). The standard of review of an order granting summary judgment is *de novo*. *Dowd & Dowd, Ltd.*, 181 Ill. 2d at 483.

■ The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court and, thus, are appropriate subjects for disposition by way of summary judgment. *Travelers Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278, 292 (2001). In construing an insurance policy, the primary function of the court is to ascertain and enforce the intentions of the parties as expressed in the agreement. *Outboard Marine Corp.*, 154 Ill. 2d at 108. To ascertain the intent of the parties and the meaning of the words used in the insurance policy, the court must construe the policy as a whole, taking into account the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subject matter that is insured, and the purposes of the entire contract. *Outboard Marine Corp.*, 154 Ill. 2d at 108.

If the words in the policy are clear and unambiguous, the court will afford them their plain, ordinary meaning and will apply them as written. *Travelers*, 197 Ill. 2d at 292-93. In cases of ambiguity, Illinois courts favor a liberal construction of insurance policies in favor of the insured. *Oakley Transport, Inc. v. Zurich Insurance Co.*, 271 Ill. App. 3d 716, 722 (1995). This is particularly true where, as here, the insurer seeks to avoid coverage, based upon an exclusion in the policy. *Oakley Transport*, 271 Ill. App. 3d at 722. The applicability of an exclusion must be free and clear from doubt. That said, a court will not pervert the plain language of the policy in order to create an ambiguity where none exists. *Travelers*, 197 Ill. 2d at 293. Additionally, a court will not adopt an interpretation that is strained, forced, unnatural, or unreasonable or one that leads to an absurd result. *United States Fire Insurance Co. v. Hartford Insurance Co.*, 312 Ill. App. 3d 153, 155 (2000).

■ We believe that the terms of the insurance policy at issue here are clear and unambiguous. The plaintiff's insurance policy excludes from coverage losses due to dishonest, fraudulent, criminal, or illegal acts of the policyholder. Driving under the influence is a criminal act in the State of Illinois. At minimum, it is a Class A misdemeanor, punishable by a term of imprisonment of less than a year. See 625 ILCS 5/11—501 (West 2004); 730 ILCS 5/5—8—3 (West 2004). Accord-

ingly, losses due to driving under the influence by the plaintiff are not covered under the insurance policy here.

The plaintiff cites *Lincoln Logan Mutual Insurance Co. v. Fornshell*, 309 Ill. App. 3d 479 (1999), for the proposition that the exclusion at issue here contravenes public policy. We believe that the plaintiff's reliance on *Lincoln Logan* is misplaced. In that case, Ronald Sturgeon and Arthur Fornshell became involved in a physical altercation in the restroom of a local tavern. *Lincoln Logan*, 309 Ill. App. 3d at 480. During the altercation, Sturgeon stabbed Fornshell in the chest and abdomen with a pocketknife. *Lincoln Logan*, 309 Ill. App. 3d at 480. Fornshell died and Sturgeon was convicted of first degree murder. *Lincoln Logan*, 309 Ill. App. 3d at 480. Fornshell's parents then sued Sturgeon for wrongful death. *Lincoln Logan*, 309 Ill. App. 3d at 480.

Lincoln Logan Mutual Insurance and Grinnell Mutual Reinsurance defended Sturgeon as part of the personal liability coverage in Sturgeon's homeowner's insurance policy. *Lincoln Logan*, 309 Ill. App. 3d at 480-81. However, Lincoln Logan and Grinnell defended Sturgeon under a reservation of rights, alleging that Sturgeon's policy did not cover him for "intentional acts." *Lincoln Logan*, 309 Ill. App. 3d at 481. Lincoln Logan and Grinnell subsequently brought an action for a declaratory judgment that they were not obligated to defend or indemnify Sturgeon. *Lincoln Logan*, 309 Ill. App. 3d at 481. Following a bench trial, the trial court found in favor of the insurance companies. *Lincoln Logan*, 309 Ill. App. 3d at 482-83.

On appeal, the Illinois Appellate Court, Fourth District, upheld the ruling of the trial court. *Lincoln Logan*, 309 Ill. App. 3d at 483-85. The reviewing court noted that the intentional act exclusion was problematic in that it could render the insurance policy illusory if it excluded coverage for intentional acts as well as negligent and innocent acts. *Lincoln Logan*, 309 Ill. App. 3d at 484. However, the reviewing court also noted that the exclusion should be read not in isolation, but with reference to the facts of the case at hand. *Lincoln Logan*, 309 Ill. App. 3d at 484-85. Additionally, the provision should be interpreted reasonably so as not to render an absurd result. *Lincoln Logan*, 309 Ill. App. 3d at 484. Reading the exclusion in conjunction with the relevant facts of the case, the reviewing court concluded that the parties obviously did not intend to insure for an intentional act of murder. *Lincoln Logan*, 309 Ill. App. 3d at 483.

*Lincoln Logan* is somewhat analogous to the present case; however, it does not support the plaintiff's belief that the exclusion at issue here is contrary to public policy. In fact, it supports this court's conclusion that public policy is not offended by the instant provision.

As noted in *Lincoln Logan*, exclusions should be read not in isolation but in conjunction with the facts at hand. *Lincoln Logan*, 309 Ill. App. 3d at 484-85. Indeed, whether an insurance policy violates public policy depends on the facts and circumstances of the case, as well as the language of the insurance policy. See also *State Farm Mutual Automobile Insurance Co. v. Villicana*, 181 Ill. 2d 436, 448-49 (1998); *Braye v. Archer-Daniels-Midland Co.*, 175 Ill. 2d 201, 215-16 (1997).

In this case, a literal interpretation of the exclusion would effectively deny coverage for acts as minimal as infractions of the statutory rules of the road. Nonetheless, such a literal interpretation would be absurd. Policyholders and insurance companies do not normally expect instances of speeding, running a stop sign, or failing to reduce speed to avoid an accident to be excluded from insurance coverage. Speeding, running a stop sign, and other like infractions are not even considered criminal offenses but, rather, are considered quasi-criminal, petty offenses. See 625 ILCS 5/11—202 (West 2004). On the other hand, driving while under the influence is a criminal offense. The parties here clearly did not intend that coverage would be provided for criminal acts such as drunk driving.

The defendant minimizes the criminality of his conduct by categorizing DUI as an unintentional or negligent act. The defendant improperly relies on *Leocal v. Ashcroft*, 543 U.S. 1, 160 L. Ed. 2d 271, 125 S. Ct. 377 (2004), in mislabeling DUI as such. In fact, *Leocal* does not stand for that proposition. The *Leocal* Court never determined that DUI was an unintentional or negligent act; it simply held that DUI, as defined by Florida statute, was not a crime of violence warranting deportation. *Leocal*, 543 U.S. at 11, 160 L. Ed. 2d at 280, 125 S. Ct. at 382-83. It is more accurate to say that DUI is a "strict liability offense," or an offense that does not require proof of any particular mental state. See *People v. Gassman*, 251 Ill. App. 3d 681, 689 (1993).

The dissent's comparison of DUI to petty, nonjailable offenses such as failure to reduce speed, driving too fast for conditions, and improper lane usage is equally improper. Like DUI, most minor infractions of the rules of the road are strict liability offenses. However, DUI is much more serious than petty violations of the rules of the road. As noted above, DUI is punishable by imprisonment of up to a year if charged as a Class A misdemeanor and more than a year if charged as a felony. On the other hand, a violation of the rules of the road is punishable only by a minimal fine.

The fact that the legislature chose to define DUI in terms of strict liability does not negate the criminality of DUI. Criminal offenses punishable by time in jail may be defined in terms of strict liability

when the public welfare so dictates. *People v. Farmer*, 165 Ill. 2d 194, 205 (1995). We note that possession of contraband while in a penal institution is one such offense. *Farmer*, 165 Ill. 2d at 205. In sum, the fact that DUI is a strict liability offense does not lessen the severity of the crime.

We believe that an exclusion for a criminal act such as drunk driving is reasonable in this case. Indeed, "[e]xclusions for intentional acts are necessary to help insurers set rates and supply coverage. If a single insured is allowed, through an intentional act, to consciously control risks covered by the policy, the central concept of insurance is violated." *State Farm Fire & Casualty Co. v. Leverton*, 314 Ill. App. 3d 1080, 1084-85 (2000). This is especially true where, as here, the insurance policy in question is an "auto gap" policy and does not pose undue hardship on innocent third parties who may be involved in the accident.

With that, we are mindful that courts in other jurisdictions have been reluctant to apply criminal exclusions, such as the one here, when they are contained in automobile liability policies. See, *e.g.*, *Allstate Indemnity Co. v. Wise*, 818 So. 2d 524 (Fla. App. 2001); *Mendoza v. Rivera-Chavez*, 140 Wash. 2d 659, 99 P.2d 29 (2000); *Sledge v. Continental Casualty Co.*, 639 So. 2d 805 (La. App. 1994); *Bass v. Horizon Assurance Co.*, 562 A.2d 1194 (Del. 1989). The rationale of all of those cases is that applying criminal acts exclusions would deny insurance coverage to innocent victims of the criminal acts, which would run afoul of the mandatory automobile liability insurance statutory provisions enacted in 47 states and the District of Columbia. See *Wise*, 818 So. 2d at 527; *Mendoza*, 140 Wash. 2d at 672, 99 P.2d at 34; *Sledge*, 639 So. 2d at 812; *Bass*, 562 A.2d at 1197.

This same public policy concern of innocent accident victims being left without coverage exists in Illinois. Indeed, where liability coverage is mandated by Illinois' financial responsibility law, an insurance policy provision that conflicts with the law will be deemed void. *Progressive Universal Insurance Co. of Illinois v. Liberty Mutual Fire Insurance Co.*, 215 Ill. 2d 121, 129 (2005). That said, an agreement will not be invalidated on public policy grounds unless it is clearly contrary to what the constitution, the statutes, or the decisions of the courts find the public policy to be or unless it is manifestly injurious to the public welfare. *Progressive*, 215 Ill. 2d at 129-30. In the present case, we are not construing an automobile liability policy, but, rather, we are construing an "auto gap" policy. Thus, we are not confronted with the public policy concern of innocent accident victims being left without coverage.

In light of our interpretation that the plaintiff's insurance policy

excludes coverage for criminal acts such as driving under the influence, the trial court's entry of summary judgment for the plaintiff must be reversed. Additionally, the trial court's denial of the defendant's motion for summary judgment must be reversed. Under the terms of the plaintiff's insurance policy, the defendant is under no obligation to compensate the plaintiff for his vehicle loss, because the loss was caused by the plaintiff's criminal act of driving under the influence.

For the foregoing reasons, the judgment of the circuit court of Lake County is reversed.

Reversed.

KAPALA, J., concurs.

JUSTICE McLAREN, dissenting:

I respectfully dissent. The majority's interpretation of the insurance policy permits defendant to have collected insurance premiums from plaintiff for virtually no meaningful coverage. The majority ignores the well-settled principle that the law accords the insured the most favorable and liberal construction of exclusionary insurance provisions. *National Union Fire Insurance Co. of Pittsburgh, Pennsylvania v. Glenview Park District*, 158 Ill. 2d 116, 122 (1994). Insurance provisions that limit or exclude coverage are to be construed liberally in favor of the insured and "most strongly against the insurer." *Glenview Park District*, 158 Ill. 2d at 122. The majority has construed the relevant provision liberally in favor of the insurer rather than the insured.

The policy at issue in this case excludes any loss or damage:
> "Arising directly or indirectly out of any dishonest, fraudulent, criminal or illegal act committed by you or your agents."

There is no doubt that plaintiff committed a "crime" within the common meaning of the word. The appropriate question now becomes whether the exclusionary clause should be enforced when it results in an illusory promise to provide coverage.

Generally, provisions that deny coverage for intentional acts are interpreted to exclude coverage where the insured has (1) intended to act and (2) specifically intended to harm a third party. *Lincoln Logan Mutual Insurance Co. v. Fornshell*, 309 Ill. App. 3d 479, 483 (1999). However, it is contrary to the parties' intentions to interpret such a provision to deny coverage for negligent or innocent acts as well, because the clause would contradict and swallow the entire personal liability policy. *Fornshell*, 309 Ill. App. 3d at 484. Whenever possible,

courts should construe a contract so that different provisions are harmonized and do not conflict with one another.

In this case, plaintiff committed the illegal act of driving under the influence. See 625 ILCS 5/11—501 (West 2004). This illegal act has no *mens rea* element. That is, the State is not required to prove intent. See 625 ILCS 5/11—501 (West 2004). Rather, DUI is a strict liability offense. See *People v. Gassman*, 251 Ill. App. 3d 681, 689 (1993). Although not at issue here, an individual involved in an automobile accident can be charged with numerous traffic violations, or "illegal acts" as the term is used in the exclusion provision. See, *e.g.*, 625 ILCS 5/11—601(a) (West 2004) (failure to reduce speed); 625 ILCS 5/11—601 (West 2004) (operating a vehicle at a greater-than-reasonable speed for traffic conditions); 625 ILCS 5/11—709 (West 2004) (improper lane usage). None of these "illegal acts" has a *mens rea* element. Yet, they are "illegal" within the meaning of the exclusion provision.

Curiously, in determining that minor traffic offenses and petty offenses are not excluded from coverage, the majority makes a distinction without a difference, relative to insurance law, and an immaterial distinction, relative to criminal law, concerning the level of punishment.

Because defendant has neither alleged nor attempted to prove that plaintiff's act of driving into the tree that damaged the vehicle was an intentional act, *i.e.*, had a *mens rea* and was intended to harm persons or property, it was neither more nor less unintentional than the minor traffic offenses, petty offenses, and negligent torts that the majority has seen fit to exclude under the exclusion provision. If all unintentional, negligent acts, *as defined* by the exclusion provision, are excluded from coverage as *illegal*, the exclusion subsumes the entire purpose of the policy, which is to provide gap coverage, despite the majority's improper attempt to limit the extent of the exclusion to unintentional acts. Yet, the majority announces that the intent of the parties was that DUI would be the sole unintentional act that is excluded from coverage. This is not a question of public policy but a question of the parties' intent. Here, the majority has interpreted the language of the policy to provide illusory coverage to the insured. I believe that the majority's interpretation is unreasonable and leads to an absurd result in the context of the purpose and policy of insurance coverage.

I recognize that DUI is a more serious offense than a simple traffic violation. However, the majority is recasting the agreement according to what it wants the contract to exclude rather than what the parties reasonably intended. The majority's particular interpretation of

"illegal" has no support in the text of the policy. It focuses on the level of criminality. Yet, this interpretation is based on nothing more than the majority's understandable distaste for plaintiff's conduct. The majority should refrain from redrafting an overly broad, ambiguous clause to exclude coverage for plaintiff's conduct.

The exclusion provision is sufficiently ambiguous that it should be interpreted to exclude only intentional illegal acts, which require a *mens rea* and an intention to harm a third party. When the terms of an insurance policy are ambiguous, they must be construed against the insurer, as the drafter of the policy. *Prudential Property & Casualty Insurance Co. v. Kelly*, 352 Ill. App. 3d 873, 875 (2004). The majority not only fails to do so but erroneously differentiates between unintentional illegal acts for apparent reasons immaterial to insurance law.