2016 IL App (1st) 141947

FOURTH DIVISION
March 17, 2016

No. 1-14-1947

| | | |
|---|---|---|
| MEMBERSELECT INSURANCE COMPANY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 12 CH 28339 |
| | ) | |
| FERDINAND LUZ, | ) | Honorable |
| | ) | Kathleen M. Pantle, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE ELLIS delivered the judgment of the court, with opinion.
Presiding Justice McBride and Justice Cobbs concurred in the judgment.

## OPINION

¶ 1    This appeal addresses whether a letter sent by an insured, defendant Ferdinand Luz, to plaintiff MemberSelect Insurance Company (MemberSelect) was a sufficient demand for arbitration under the underinsured motorist provision of defendant's car insurance policy with MemberSelect. The policy contained a limitations provision that barred any arbitration of an underinsured motorist claim unless it was "commenced within three years after the date of the accident." Less than two months after the accident, defendant's attorney sent MemberSelect a letter requesting arbitration of the underinsured motorist claim. There was no subsequent correspondence between the parties in the more than three years that passed while the underlying personal-injury suit progressed and ultimately settled. Defendant then sought arbitration of his underinsured motorist claim, and MemberSelect filed this declaratory-judgment action seeking a declaration that it did not have to cover defendant's claim because the limitations period had run. On cross-motions for summary judgment, the trial court found that defendant's letter had not

sufficiently demanded arbitration because it was not unequivocal and because defendant failed to select an arbitrator.

¶ 2       We disagree. Defendant's request for arbitration was unequivocal. And under the terms of the policy, defendant could have reasonably concluded that, in order to commence arbitration—and thus avoid the limitations period—all he had to do was demand arbitration. The policy did not require defendant to select an arbitrator in order to commence arbitration. Accordingly, we vacate the trial court's award of summary judgment for MemberSelect and remand with directions that the trial court enter summary judgment in favor of defendant.

¶ 3                                         I. BACKGROUND

¶ 4       On July 18, 2007, defendant was in a car accident with another vehicle in Skokie, Illinois. The driver of the other vehicle had an insurance policy with a limit of $20,000 per person.

¶ 5       At the time of the accident, defendant's policy with MemberSelect had a provision providing him coverage in case of an accident with an underinsured driver (*i.e.*, a driver whose policy limits would be insufficient to cover defendant's damages, up to the limits of defendant's own policy). The underinsured motorist coverage contained a provision governing the conduct of arbitration between defendant and MemberSelect, providing that, if defendant or MemberSelect had a dispute regarding defendant's ability to recover damages from the underinsured driver, or the amount of damages:

> "Either party may demand, in writing, that the issues, excluding matters of coverage [*sic*]. In this event, each party will select an arbitrator. The two arbitrators will select a third. If such arbitrators are not selected within 45 days, either party may request that the arbitration be submitted to the American Arbitration Association."

The underinsured motorist coverage also contained a limitations provision, which read, "Under Underinsured Motorists Coverage, any suit, action or arbitration against [MemberSelect] will be barred unless commenced within three years after the date of the accident."

¶ 6     On September 4, 2007—less than two months after the accident—defendant's attorney sent MemberSelect a letter entitled, "NOTICE OF ATTORNEY'S LIEN for UNDERINSURED MOTORIST and MEDICAL PAYMENTS CLAIM." It stated defendant's name, the policy number, and the date and location of the accident. It also notified MemberSelect of the attorney fee agreement with defendant and claimed a lien on any recovery defendant would receive. The letter concluded with the following two paragraphs:

> "**Plaintiff** [(*i.e.*, defendant in this case)] **Requests Arbitration of the Underinsured Motorist Claim**
>
> Please acknowledge receipt of this lien so that we may discuss this matter."

(Emphasis in original.) MemberSelect received the letter on September 10, 2007.

¶ 7     On June 22, 2009, defendant's counsel sent MemberSelect a list of "partial items of medical special damages totaling $15,196.40." Defendant's counsel requested that MemberSelect pay the amount of damages, or its policy limits, whichever was smaller. MemberSelect paid defendant $1,000, the limits of the medical payment coverage under the policy.

¶ 8     On July 10, 2009, defendant filed his lawsuit against the other driver involved in the car accident. His complaint sought damages "in excess of $30,000."

¶ 9     On March 8, 2011, defendant settled his underlying personal-injury suit with the other driver in the accident. Defendant received $20,000, the limits of the other driver's policy.

¶ 10    On March 11, 2011, defendant's counsel sent MemberSelect a letter which listed "special damages incurred by [defendant] as a result of the negligence of an underinsured motorist." Counsel added that she would contact MemberSelect "within the next two weeks to determine if [they could] arrive at an amicable disposition of this matter."

¶ 11    On May 3, 2012, defendant filed a demand for arbitration of the underinsured motorist claim with the American Arbitration Association.

¶ 12    MemberSelect sent defendant a letter on May 14, 2012, denying defendant's underinsured motorist claim because the limitations period in the policy had run. Defendant's counsel responded to MemberSelect's denial by saying that she had sent MemberSelect "notice demanding arbitration" on September 4, 2007. She also said, "[I]n as much as the underlying tort claim was not settled until November 2011, *** there was no underinsured motorist claim to be commenced until the underlying tort claim was concluded."

¶ 13    MemberSelect filed a complaint for declaratory judgment, alleging that it did not have to cover defendant's underinsured motorist claim because the limitations provision of the policy barred coverage. The complaint also included other counts not at issue in this appeal.

¶ 14    Both parties moved for summary judgment. Defendant argued that his attorney's September 4, 2007 letter to MemberSelect was sufficient to demand arbitration under the policy's arbitration clause. According to defendant, because he had commenced arbitration, the limitations period had not run. Defendant also argued that MemberSelect was estopped from raising the limitations period, that the limitations period was tolled pursuant to section 143.1 of the Illinois Insurance Code (215 ILCS 5/143.1 (West 2006)), and that the limitations provision violated public policy.

¶ 15    MemberSelect argued that the September 2007 letter was insufficient to serve as a demand for arbitration under the policy because "[i]t did not 'demand' arbitration or name, identify, or select an arbitrator." Thus, according to MemberSelect, arbitration never commenced, and the limitations period ran in 2010. MemberSelect also argued that it was not estopped from raising the limitations period as a defense, that section 143.1 did not toll the limitations period, and that the limitations period did not violate public policy.

¶ 16    The trial court granted MemberSelect's motion for summary judgment and denied defendant's. With regard to defendant's request for arbitration, the court found that "the policy requires an unequivocal demand for arbitration" and that "[r]equesting arbitration is insufficient." The court also found that, in order to commence arbitration and thus stop the running of the limitations provision, defendant was required to name an arbitrator, which he did not do. The court also rejected defendant's claims regarding estoppel, section 143.1, and public policy.

¶ 17    After the trial court made the necessary findings to make its order appealable pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010), defendant filed this appeal.

¶ 18                                    II. ANALYSIS

¶ 19    Defendant raises three reasons why the trial court erred in granting summary judgment for MemberSelect: (1) that his attorney's September 2007 letter was sufficient to demand arbitration under the policy and was therefore within under the limitations period on his underinsured motorist claim; (2) MemberSelect was estopped from asserting the limitations period as a defense; and (3) section 143.1 tolled the limitations period when defendant filed his proof of loss with MemberSelect in 2009. We need only address the first of these arguments because, for the reasons stated below, defendant commenced arbitration under the terms of the

policy when he requested arbitration in September 2007. Thus, the limitations period did not run, and defendant is entitled to arbitrate his underinsured motorist claim.

¶ 20    Summary judgment is proper where the pleadings, depositions, admissions, and affidavits on file reveal that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2012); *Hall v. Henn*, 208 Ill. 2d 325, 328 (2003). Where, as here, the parties filed cross-motions for summary judgment, they concede the absence of a genuine issue of material fact and invite the court to decide the questions presented as a matter of law. *Bank of America, N.A. v. Carpenter*, 401 Ill. App. 3d 788, 795 (2010). We apply *de novo* review. *Hall*, 208 Ill. 2d at 328.

¶ 21    When construing the language of an insurance policy, we apply the same principles as when we construe the language of a contract. *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17 (2005). Our primary goals are to determine the parties' intent in agreeing to the terms of the policy and to give effect to that intent, as expressed through the language of the policy. *Id.* In determining the parties' intent, we construe the policy as a whole and take into account the type of insurance provided and the purposes of the entire contract. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993).

¶ 22    If the language of the policy is unambiguous, the policy is applied as written unless it contravenes public policy. *Hobbs*, 214 Ill. 2d at 17. Where a policy is ambiguous, an insurer's liability will be liberally construed in favor of coverage. *Id.* A policy is ambiguous where it is susceptible to more than one reasonable interpretation; we will not strain to find ambiguity where the policy contains none. *Id.*

¶ 23    This case involves the interplay of two provisions of the policy's underinsured motorist coverage: the limitations provision and the arbitration provision. Under the limitations provision,

"any suit, action or arbitration" against MemberSelect regarding an underinsured motorist claim would be barred "unless commenced within three years after the date of the accident."

¶ 24 The question is, what did the insured have to do in this case to "COMMENCE" arbitration? The policy does not define "commence[ ]." Typically, "commence" means to " 'BEGIN, START, ORIGINATE.' " *Brown v. Jaimovich*, 365 Ill. App. 3d 329, 339 (2006) (quoting Webster's Third New International Dictionary 456 (1993)). In the context of a "suit" or "action" referenced in the policy language quoted in the preceding paragraph, it would obviously mean the filing of a complaint in court; in Illinois, "[e]very action *** shall be *commenced* by the filing of a complaint." (Emphasis added.) 735 ILCS 5/2-201 (West 2006).

¶ 25 But how is an *arbitration* "commenced?" Both parties agree that a review of the arbitration provision in the policy is necessary to answer that question. Again, the arbitration provision reads as follows:

" **ARBITRATION**

If we and an insured person do not agree:

1. whether that person is legally entitled to recover damages from the owner or operator of an uninsured motor vehicle or an underinsured motor vehicle; or

2. as to the amount of damages;

Either party may demand, in writing, that the issues, excluding matters of coverage [*sic*]. In this event, each party will select an arbitrator. The two arbitrators will select a third. If such arbitrators are not selected within 45 days, either party may request that the arbitration be submitted to the American Arbitration Association."

¶ 26    MemberSelect says that to "commence" an arbitration, defendant was required to *both* "demand" arbitration *and* select an arbitrator, because both a demand and the selection of an arbitrator are mentioned in the arbitration provision.

¶ 27    The "demand" language in that first sentence is obviously truncated into a sentence fragment, so that sentence literally does not explain what, exactly, either may "demand." But we agree with MemberSelect and the trial court that, in context, it can only refer to a demand "that the issues, excluding matters of coverage," *be determined by arbitration.* As the trial court noted, the language preceding this sentence is the title "ARBITRATION" and the scenario where the parties dispute either liability or damages, and the following sentences explain what transpires after the party has chosen arbitration. As the trial court correctly put it, "[t]he incomplete demand provision, therefore is, sandwiched between the leadup to arbitration and what happens once arbitration has been commenced." We agree that, for all its faults, the first sentence requires a demand that these disputed issues be arbitrated.

¶ 28    And we also agree with MemberSelect and the trial court that, at a minimum, a "demand" for arbitration is required to "commence" the arbitration under the limitations provision. The formal demand is the mechanism by which the insured formally informs the insurance company of his or her desire to exercise the contractual right to arbitration. The demand is the functional equivalent of the complaint in a civil action.

¶ 29    So we will start there and determine whether a formal "demand" was made in this case. If it was not, it will not be necessary to reach the next question, whether the selection of an arbitrator was also necessary to "commence" the arbitration.

¶ 30            A. Whether Defendant Sufficiently "Demanded" Arbitration

¶ 31 Less than two months after the accident, defendant's attorney sent MemberSelect a letter stating that defendant "**Requests Arbitration of the Underinsured Motorist Claim**." (Emphasis in original.) This sentence was set apart from the rest of the letter in a separate paragraph. MemberSelect argues that this language was too equivocal because it used the word "request" instead of the word "demand," as the policy requires. Thus, according to MemberSelect, defendant's letter "merely notified [MemberSelect] of a potential [underinsured motorist] claim." For two reasons, we reject this argument and hold that defendant made a proper "demand" for arbitration here.

¶ 32 First, we decline to adopt MemberSelect's excessively strict reading of the word "demand." Nowhere in the policy did it require that defendant use the specific word "demand." It simply said that he must demand arbitration. When construing insurance policies, we give the words of a policy "their plain, ordinary, and popular meanings." *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 366 (2006). "To do so, we look to their dictionary definitions." *Id.*

¶ 33 Dictionaries use words synonymous with the word "request" to define the word "demand." See, *e.g.*, Random House Webster's Unabridged Dictionary 528 (2d ed. 1998) (defining "demand" as "to *ask for* with proper authority," to "claim as a right," "to *call for* or require as just, proper, or necessary," or "to make a demand; *inquire*; *ask*" (emphases added)); Black's Law Dictionary 441 (7th ed. 1999) ("[t]he assertion of a legal right" or "[a] *request* for payment of a debt or an amount due" (emphasis added)); Webster's Third New International Dictionary 598 (1993) ("to make a demand : *ASK*, *INQUIRE*," "to *ask* or call for legally," or "to *ask* or call for with force or authority and with expectation of compliance" (emphases added)). As these definitions demonstrate, when a request is made for something that is one's contractual

right, the difference between a "request" and a "demand" is semantic. The ordinary meaning of the word "demand" encompasses a letter requesting defendant's contractual right to arbitration. If MemberSelect wanted to require precise wording in a demand for arbitration, it could have done so when it drafted the policy.

¶ 34    Second, the interpretation offered by MemberSelect would require us to read the arbitration provision here in a manner inconsistent with a state statute, which we may not do. See *Cummins v. Country Mutual Insurance Co.*, 178 Ill. 2d 474, 483 (1997) ("Any conflict between statutory and insurance policy provisions will be resolved in favor of the statutory provisions."); *State Farm Mutual Automobile Insurance Co. v. Smith*, 197 Ill. 2d 369, 372 (2001) ("[I]nsurance policy provisions that conflict with a statute are void."). The arbitration provision here governs not only underinsured-motorist claims but also uninsured-motorist claims. And an Illinois statute governs arbitration demands for uninsured-motorist claims. Section 143a(1) of the Illinois Insurance Code (215 ILCS 5/143a(1) (West 2006)) provides for an arbitration procedure that mirrors the procedure in the arbitration provision at issue in this case, but it only requires that the insured *request* arbitration: "Upon the insured *requesting* arbitration, each party to the dispute shall select an arbitrator and the 2 arbitrators so named shall select a third arbitrator." (Emphasis added.) *Id*. The statute envisions that a "request" for arbitration will be sufficient to trigger the right to arbitration for uninsured-motorist claims.

¶ 35    As we have noted, this case involves an underinsured-motorist claim, but we find it impossible to believe that the policy provision under review requires, at the same time, a "request" for *un*insured-motorist claims but a more specifically-worded "demand" for an *under*insured-motorist claim. There is no hint in the arbitration provision that one kind of claim should receive different treatment than the other, and we can think of no valid reason why it

would. After all, our supreme court has noted that "[u]ninsured and underinsured motorist policies provide virtually the same coverage to the insured." *Sulser v. Country Mutual Insurance Co.*, 147 Ill. 2d 548, 556 (1992). "[U]ninsured-motorist[ ] and underinsured-motorist coverage provisions are 'inextricably linked' " and "serve the same underlying public policy: ensuring adequate compensation for damages and injuries sustained in motor vehicle accidents." *Phoenix Insurance Co. v. Rosen*, 242 Ill. 2d 48, 57-58 (2011) (quoting *Schultz v. Illinois Farmers Insurance Co.,* 237 Ill. 2d 391, 404 (2010)). It would be nonsensical and unreasonable to read the arbitration provision before us as requiring a mere *request* for arbitration for uninsured-motorist claims while requiring a more forcefully-worded "demand" for arbitration for underinsured-motorist claims.

¶ 36    In support of its claim that defendant's request for arbitration did not constitute a "demand" for arbitration, MemberSelect cites *Buchalo v. Country Mutual Insurance Co.*, 83 Ill. App. 3d 1040 (1980), and *Rein v. State Farm Mutual Automobile Insurance Co.*, 407 Ill. App. 3d 969 (2011). We find those cases distinguishable from the present action. In *Buchalo*, the insured's attorney sent the insurance company a letter saying, " 'I believe the best thing to do with respect to this case is to arbitrate. I will, in the future, forward you the name of our arbitrator.' " *Buchalo*, 83 Ill. App. 3d at 1043. This court held that the letter was "at best a statement of opinion by plaintiff's former counsel" and did "not constitute an unequivocal demand for arbitration." *Id*. at 1045.

¶ 37    In *Rein*, the letter sent to the insurance company, which the insured claimed to be a demand for arbitration, did not mention the word "arbitration" at all. *Rein*, 407 Ill. App. 3d at 971. Instead, it merely "notified" the insurance company of the insured's " 'intention to pursue an Uninsured/Underinsured Motorist Claim,' " requested the company to " 'open a claim file on

[the] matter,' " and asked the company to " 'contact the [insured's attorney] so [they could] discuss the matter in greater detail.' " *Id.*

¶ 38    In this case, defendant did not merely state his opinion about the desirability of arbitration, nor did he fail to mention the word "arbitration" altogether. Defendant, in bold letters set apart from the remainder of his letter, stated that he "**Requests Arbitration of the Underinsured Motorist Claim**." (Emphasis in original.) We hold that this request for a contractual right available to him under the insurance policy was an unequivocal demand for arbitration.

¶ 39    B. Whether the Selection of an Arbitrator Was Necessary to "Commence" Arbitration

¶ 40    As we have found that the request for arbitration sufficiently constituted a demand for arbitration under the policy, we must next consider whether MemberSelect is correct that defendant was also required to select an arbitrator in order to "commence" the arbitration. If selecting an arbitrator was necessary to "commence" the arbitration, then MemberSelect prevails on its limitations argument, because it is undisputed that defendant did not select an arbitrator within the three-year limitations period.

¶ 41    Again, the arbitration language provided that:

"Either party may demand, in writing, that the issues, excluding matters of coverage [*sic*]. In this event, each party will select an arbitrator. The two arbitrators will select a third. If such arbitrators are not selected within 45 days, either party may request that the arbitration be submitted to the American Arbitration Association."

¶ 42    In interpreting this policy provision, "we must be guided not by what the insurer intended but by what a reasonable person in the shoes of the insured would understand the policy to mean." *Indiana Insurance Co. v. Royce Realty & Management, Inc.*, 2013 IL App (2d) 121184, ¶

28. We will view the language through the eyes of an "average, ordinary, normal, reasonable person." *Gillen v. State Farm Mutual Automobile Insurance Co.*, 215 Ill. 2d 381, 393 (2005). And where, as here, insurance provisions are claimed to exclude or deny coverage, the supreme court has cautioned that we must review them "narrowly" and apply them "only where [their] terms are clear, definite, and specific." *Id.*

¶ 43 We do not believe that a reasonable person, reading this insurance policy provision, would understand that the selection of an arbitrator is part of the "commencement" of the arbitration. We reach this conclusion for two reasons.

¶ 44 First and foremost, a careful review of this language shows that the selection of an arbitrator is not a requirement at all. The provision states that "[i]n this event"—the formal demand for arbitration—"each party will select an arbitrator." But it goes on to contemplate that the insured (or insurer, or both parties) may not select an arbitrator within 45 days, and in that event, either party may request that the arbitration be submitted to the American Arbitration Association. The insured could choose to select an arbitrator immediately upon the demand for arbitration, wait an undefined amount of time before doing so—*or never do it*.

¶ 45 We fail to see how a reasonable person, reading this language, would consider the "commencement" of an arbitration to include the selection of an arbitrator, when the plain language of that provision contemplates that the selection of an arbitrator might never occur. It would come as a great surprise to any ordinary, reasonable person that an act that is not even required under the arbitration provision could be interpreted as so critical to the process that the failure to perform that act is fatal to one's contractual right to seek arbitration in the first place. It would be absurd to hold that an act that is not mandatory could somehow be read as a condition precedent to prosecuting an arbitration, and we will not adopt an absurd interpretation. See, *e.g.*,

*Bohner v. Ace American Insurance Co.*, 359 Ill. App. 3d 621, 623 (2005) ("[A] court will not adopt an interpretation [of an insurance policy] that *** leads to an absurd result."). That is doubly true given that the effect of that interpretation would be to cut off an insured's contractual right to arbitration, a construction we may adopt only when the language is "clear, definite, and specific." *Gillen*, 215 Ill. 2d at 393.

¶ 46    At a minimum, at least *one* reasonable interpretation of the arbitrator-selection language is that it informs the insured of his or her *right* or option to pick an arbitrator, an explanation of how the process works that otherwise would not be obvious to an insured. We cannot say that the *only* reasonable interpretation of the arbitrator-selection language is that it imposes a mandatory duty on the insured for which the consequences of noncompliance are fatal. If there is more than one reasonable interpretation of an insurance provision, we will choose the one that favors the insured over one that denies the insured a bargained-for contractual right. See *Hobbs*, 214 Ill. 2d at 17; *Gillen*, 215 Ill. 2d at 393.

¶ 47    We understand that an arbitration cannot go forward without an arbitrator. The arbitrator is an indispensable part of any arbitration, just as a judge is an indispensable part of a lawsuit. But many things are indispensable to a lawsuit or arbitration, and they are not all part of the "commencement" of that action. Service of process on the defendant, to name one, is indispensable to a lawsuit, but the lawsuit does not "commence[ ]" upon service on the defendant; it commences upon the filing of the complaint. 735 ILCS 5/2-201 (West 2006).

¶ 48    MemberSelect and the trial court viewed defendant's inaction on this arbitration claim as slumbering on his rights. Maybe so. But that does not mean that he did not "commence" the arbitration; it just means he did not prosecute it aggressively once commenced. In a civil case, if a plaintiff filed a lawsuit to commence the action but did not make diligent attempts to serve the

defendant, that action could be dismissed on that basis. Ill. S. Ct. R. 103(b) (eff. July 1, 2007). If a plaintiff served the defendant but then failed to do anything at all on the case, the matter could be dismissed for want of prosecution. See, *e.g.*, *Epley v. Epley*, 328 Ill. 582, 585 (1928). But in neither of those instances would we deny that the plaintiff properly "commenced" the lawsuit. Likewise, an insurance company frustrated with an insured who failed to move swiftly on an arbitration has weapons at its disposal. The insurance company here was not helpless. MemberSelect could have selected its arbitrator. It could have jump-started the arbitration process itself by filing with the American Arbitration Association, as the plain language of the policy provision permits. Or it could have drafted the policy language in such a way to make it clear that if the insured failed to select an arbitrator before the three-year limitations period, its arbitration right would be forfeited. What MemberSelect cannot do is deny that the insured timely "commenced" the arbitration under the policy language at issue.

¶ 49     In support of its contention that "under Illinois law, in order to commence arbitration an insured must make an unequivocal demand for arbitration \*\*\* as well as name an arbitrator within the requisite time period," MemberSelect again cites *Buchalo*, 83 Ill. App. 3d 1040, and *Rein*, 407 Ill. App. 3d 969.

¶ 50     We again find those cases distinguishable, because in both *Buchalo* and *Rein*, the arbitration provision contained language that was materially different than the language in this case. In *Buchalo*, the uninsured-motorist provision of the policy said that, if the parties had a dispute regarding damages, " 'each party shall, upon written demand of the Insured or upon written demand of the [insurance] Company, select a competent and disinterested arbitrator.' " *Buchalo*, 83 Ill. App. 3d at 1042. Nothing in that policy allowed the insured up to 45 days or more to select that arbitrator, nor did it contemplate that the insured might *never* select an

arbitrator. Rather, it stated that each party " 'shall' " select an arbitrator " 'upon written demand of' " one of the parties. *Id.* The use of the word " 'shall' " suggested it was a mandatory obligation, and the phrase " 'upon written demand' " (*id.*), without any suggestion that the insured could wait 45 days or any other period of time, suggested that this mandatory duty was to be made contemporaneously with the demand itself.

¶ 51    In *Rein*, the arbitration language stated that, " 'If the insured requests arbitration, each party to the dispute shall select an arbitrator.' " *Rein*, 407 Ill. App. 3d at 974. Again, the language was stated in mandatory form and did not permit or even contemplate the insured's failure to select an arbitrator.

¶ 52    Here, in contrast, the language makes it clear that the selection of an arbitrator was not mandatory. The provision contemplates a scenario where the insured never selects an arbitrator and does not remotely hint at any fatal consequences for that failure. Thus, while both *Buchalo* and *Rein* found that the selection of an arbitrator was a condition precedent to "commencing" the arbitration, it did so based on different language in different arbitration provisions.

¶ 53    Because of the meaningful difference in the policy language here compared to *Buchalo* and *Rein*, we find those cases distinguishable. We hold that the selection of the arbitrator was not necessary to "commence" the arbitration under the limitations provision in the insurance policy.

¶ 54    Because we hold that defendant here properly demanded arbitration, and because we find that nothing else was required of him to "commence" the arbitration, we hold that defendant's right to seek arbitration was not barred by the three-year limitations provision in the policy. Defendant should be allowed to arbitrate his dispute. The trial court erred in awarding summary judgment to MemberSelect and in denying defendant's motion for summary judgment.

¶ 55    In light of our holding, it is unnecessary to consider defendant's other arguments regarding estoppel or the tolling of the limitations period.

¶ 56                                III. CONCLUSION

¶ 57    For the reasons stated, we vacate the trial court's judgment in this case and remand this matter with directions to deny MemberSelect's motion for summary judgment and to grant defendant's motion for summary judgment.

¶ 58    Vacated and remanded with directions.